PANDUIT CORPORATION, Plaintiff-Appellee, *v.* ALL STATES PLASTIC MANUFACTURING CO., INC., Defendant-Appellant.—(JAMES HOOD, Defendant.)

First District (4th Division)    No. 79-909

Opinion filed May 29, 1980.

Charles A. Laff, Martin L. Stern, and Patrick G. Burns, all of Laff, Whitesel & Rockman, of Chicago, for appellant.

Coghlan, Joyce and Nellis, of Chicago (James L. Coghlan and Mairen C. Kelly, of counsel), for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Defendant, All States Plastic Manufacturing Company, Inc., brought this interlocutory appeal under Supreme Court Rule 307(a)(1) (Ill. Rev.

Stat. 1977, ch. 110A, par. 397(a)(1)), asking this court to set aside a preliminary injunction entered in the circuit court of Cook County. Subsequent to the taking of the appeal, the preliminary injunction expired on its own terms on January 10, 1980. Our analysis of the factual matters presented in the record and the applicable law compels the conclusion that this appeal must be dismissed since the underlying questions have become moot. We set forth the basis for our conclusion.

Plaintiff, Panduit Corporation, is a Delaware corporation registered and doing business in Illinois. Panduit manufactures a product known as a cable-tie, a molded self-locking plastic strap used for bundling together electrical wires so that the wiring can be mounted on a wall. Panduit sells this product throughout many parts of the world. All States is an Illinois corporation with offices in Chicago. All States manufactures and sells cable-ties in competition with Panduit. Defendant, James Hood, has at various times been an employee of both Panduit and All States, and this controversy arose as a result of this employment.

In 1961, Hood began working for Panduit as a molding machine operator and continued working for Panduit until June 1977. During the time of this employment, Hood was promoted to foreman, to production supervisor, and finally to vice president in charge of production at Panduit's Illinois plant.

In June 1977, Hood terminated his employment with Panduit and remained unemployed for six months thereafter. At the time, he was bound under a one-year post-employment restrictive covenant contained in his employment agreement with Panduit that prevented Hood from working for businesses that competed with Panduit. This covenant expired in June 1978 and is not involved in this case.

On January 3, 1978, Hood was rehired by Panduit with the understanding that he would be made manager of cable-tie production at Panduit's new plant in West Germany. The new plant was to produce a new kind of cable-tie called a Uni-Ty. As a condition of this employment, Hood was required to sign a new employment contract which also contained a restrictive covenant. Under that covenant, Hood promised not to reveal any trade secrets that he learned while working for Panduit. He also promised not to render services directly or indirectly to any "conflicting business" for a period of two years following the termination of his employment with Panduit. The contract defined "conflicting business" as one that produced a conflicting product. A conflicting product was defined as one that was the same as, or similar to, or competed with a product, or process upon which Hood worked or would work during the last two years of his employment by Panduit. There was no specific geographical limitation contained in the employment contract. On January 10, 1978, seven days after resuming employment, Hood again

terminated his employment with Panduit because of what Hood considered to be a conflict between another employee and him.

In August 1978, Hood went to work for Republic Molding Company in Niles, Illinois, at a salary substantially less than the $40,000 per year salary he had earned with Panduit. He worked for Republic for four months. This employment appears to have resulted from several letters sent by Hood to a number of companies, including All States, seeking employment. Republic does not produce cable-ties.

After a series of contacts with All States, Hood was hired by All States in January 1979. At the time, All States knew of the restrictive covenant in Hood's employment contract with Panduit but hired Hood anyway, promising him to pay all of his legal fees if litigation regarding the restrictive covenant followed. Hood was hired to be manager of All States' production of cable-ties. His salary was set at $40,000 per year.

On February 26, 1979, Panduit filed its action against All States and Hood. The complaint, later amended, asked for both injunctive and pecuniary relief, and also for punitive damages. Panduit alleged that Hood was revealing trade secrets to All States and All States was incorporating these trade secrets into its production system. Panduit sought to enforce the two-year restrictive covenant, which would expire on January 10, 1980, against Hood and to prevent All States from interfering with Panduit's contract with Hood. Panduit also sought damages for the alleged use of its trade secrets.

At the same time as it filed its complaint, Panduit filed a motion for a temporary restraining order against both defendants. Both All States and Hood received notice of this motion. At a hearing in which attorneys for Panduit and All States were present, the trial judge concluded that it should issue the temporary restraining order and also set a hearing to determine whether a preliminary injunction should issue. The temporary restraining order went into effect on February 27, 1979, following Panduit's posting of a $50,000 bond. Under the terms of the temporary restraining order, Hood was enjoined from working for All States and from revealing any trade secrets to All States. All States was enjoined from employing Hood and from using or disclosing any trade secrets it may have acquired through Hood.

On March 5, 1979, both defendants moved to dissolve the temporary restraining order. At the same time, both defendants filed their answers to the complaint, denying most of the substantive allegations in the complaint and setting up various affirmative defenses. Panduit then filed its reply to the defenses and its motion for a preliminary injunction.

On March 15, 1979, defendants' motion to dissolve the temporary restraining order was denied. Thereafter, the temporary restraining order was extended several times so that the parties could take what discovery

they needed in preparation for a hearing on the preliminary injunction. After several days of hearings, the preliminary injunction was issued on May 15, 1979. The preliminary injunction enjoined the defendants in the same manner as the temporary restraining order except that Hood was enjoined from working for All States and All States was enjoined from employing Hood until January 10, 1980, the day the two-year restrictive covenant would expire. Neither defendant moved to dissolve the preliminary injunction.

Exactly 30 days after the issuance of the preliminary injunction, on June 14, 1979, both defendants filed their notice of interlocutory appeal from the order granting the preliminary injunction. After several delays effected by defendants and Panduit, oral argument was heard by this court on April 3, 1980, almost three months after the preliminary injunction expired by its own terms. Prior to oral argument, Panduit and defendant Hood entered into a settlement agreement, and Hood is now working again for Panduit and no longer challenges the terms of the injunction or the restrictive covenant.

On appeal, All States has attempted to have us review both the validity of the order granting the temporary restraining order and the order granting the preliminary injunction. All States' main contentions are that no restraining order or injunction could have been issued because (1) the restrictive covenant is void on its face because it lacks a geographical limitation, and (2) the trial court abused its discretion in issuing the temporary restraining order and the preliminary injunction because Panduit failed to make a sufficient showing that irreparable injury would occur to it, and, particularly, Panduit failed to show that any trade secrets were involved in the machines and processes used for manufacturing cable-ties.

All States has asked us to review the trial court's orders in spite of the fact that the preliminary injunction has expired since All States contends that a question of damages resulting from the orders exists if the orders were improperly issued.

OPINION

I

██ █ We first consider whether the questions raised regarding the propriety of the issuance of the preliminary injunction are now moot. A case becomes moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant effectual relief to any party involved in the suit. (*Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 384 N.E.2d 1309.) The preliminary injunction has now expired by its own terms and nothing we do can affect the enforcement of that injunction. At oral argument, All States alleged that it is still entitled to a

ruling on the merits because, if the preliminary injunction was improperly issued, it would be entitled to have damages assessed against Panduit under section 12 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 12). Since we believe that defendant is no longer entitled to have damages assessed under section 12 of the Injunction Act, we hold that the issues involved in the preliminary injunction are moot because no effectual relief can be granted by this court.

Section 12 of the Injunction Act provides:

"In all cases where an injunction is dissolved by any court in this state, the court, after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require, and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same. However, a failure so to assess damages shall not operate as a bar to an action upon the injunction bond."

Our supreme court has repeatedly held that this statute is to be strictly construed so that, before a party is entitled to have damages assessed under section 12 for the wrongful issuance of a preliminary injunction, he must show that the preliminary injunction was dissolved and that it was dissolved before a final determination of the case on the merits. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 343 N.E.2d 479; *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1; *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 245 N.E.2d 468, *cert. denied* (1969), 396 U.S. 8, 24 L. Ed. 2d 8, 90 S. Ct. 26; *United Mail Order, Warehouse & Retail Employees Local 20 v. Montgomery Ward & Co.* (1956), 9 Ill. 2d 101, 127 N.E.2d 47, *cert. denied* (1957), 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 558; *Stein v. Green* (1955), 6 Ill. 2d 234, 128 N.E.2d 743; *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 126 N.E.2d 201; *Schuler v. Wolf* (1939), 372 Ill. 386, 24 N.E.2d 162.) Expiration of an injunction by its own terms is not equivalent to the dissolution of the injunction for the purposes of section 12, and an injunction that has expired by its own terms can no longer be dissolved because a court cannot dissolve that which no longer exists. (*Buckingham Corp. v. Vesolowski* (1974), 17 Ill. App. 3d 58, 307 N.E.2d 703.) Thus, even if we were to hold the preliminary injunction was improperly issued, All States still would not be entitled to have damages assessed against Panduit under section 12 because such a ruling would not result in dissolving the already defunct preliminary injunction.

It should be noted, however, that it does not necessarily follow that, in view of the principles expressed, assessment of damages is unavailable in those cases where a short term preliminary injunction expires by its own terms before an appellate court can consider whether the

preliminary injunction was improperly issued. As indicated in this court's ruling in *Buckingham Corp. v. Vesolowski* (1974), 17 Ill. App. 3d 58, 307 N.E.2d 703, the key to the preservation of the question of damages for short term preliminary injunction lies in the timely filing in the trial court of a motion to dissolve the injunction. In the present case, All States failed to move for the dissolution of the preliminary injunction. If All States had so moved, and if its motion had been denied, this court could review the trial court's decision to deny the motion to dissolve. We could then hold that the motion should have been granted, having the effect of dissolving the preliminary injunction when it should have been dissolved, and thus preserving the question of damages under section 12 of the Injunction Act.

In the present case, we cannot review the denial of a motion to dissolve the preliminary injunction since All States failed to make such a motion. Thus, at this point in the proceedings, since the preliminary injunction has expired of its own terms, we are without the legal underpinnings to support a section 12 hearing for the assessment of damages because no motion was made to dissolve the preliminary injunction. The only ruling we could make to aid All States is to find that the preliminary injunction was improperly issued, and this would not be enough to bring All States within section 12. Therefore, since section 12 relief is unavailable to All States, and since this court can grant no other effectual relief, it follows that the issues involved in the order granting the preliminary injunction are now moot.

## II

■■ ■ We next consider All States' contention that the temporary restraining order was improperly issued. A temporary restraining order or the denial of a motion to vacate or dissolve that order is an appealable order under Supreme Court Rule 307(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a)(1)). (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.) Also, when a temporary restraining order is dissolved before a final determination of the case on its merits, damages may be assessed under the provisions of section 12 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 12).

In the present case, All States timely moved to dissolve the temporary restraining order, thereby taking the initial step necessary to preserve the issue of damages under section 12 if the temporary restraining order were to expire before this court could determine the issues on appeal. Nevertheless, we find that All States cannot raise on this appeal the alleged impropriety of the temporary restraining order or the alleged error by the trial court in denying the motion to dissolve that order.

Our ruling depends on an examination of Supreme Court Rule 307 (Ill. Rev. Stat. 1977, ch. 110A, par. 307), which allows interlocutory appeals as a matter of right. Rule 307(a)(1) allows a party to take an appeal from interlocutory orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a)(1).) Rule 307(a) further provides, "The appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal * * *."

● 5, 6 Rule 307 allows only the review of the order from which a party takes an appeal. An appeal under Rule 307 does not open the door to a general review of all orders entered by the trial court up to the date of the order that is appealed. (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106.) In the present case, All States, in its notice of appeal, sought to appeal only the order granting the preliminary injunction. Since this is the only order from which All States took an appeal, it is the only order that can be reviewed by this court under the limitations established by Rule 307.

■■ Additionally, we note that the denial of a motion to dissolve a temporary restraining order has the effect of being a final adjudication that the temporary restraining order was properly issued. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1; *Stein v. Green* (1955), 6 Ill. 2d 234, 128 N.E.2d 743; *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 126 N.E.2d 201.) So if a party fails to timely appeal a trial court's order denying a motion to dissolve within the 30 days provided for such an appeal under Rule 307, that order becomes the law of the case from which an appeal cannot be taken. (See *Debowski v. Shred Pax Corp.* (1977), 45 Ill. App. 3d 891, 359 N.E.2d 204.) In the present case, All States' motion to dissolve the temporary restraining order was denied on March 15, 1979. All States did not take an appeal from any order until June 14, 1979. Since All States did not take an appeal from the trial court's order denying the motion to dissolve within the 30 days allowed by Rule 307, it is foreclosed from challenging that order on appeal.

Accordingly, for the reasons noted, we find that the issues raised on this appeal are now moot and the appeal must be dismissed.

Appeal dismissed.

JOHNSON and ROMITI, JJ., concur.