RUSSELL STOLLER, Plaintiff-Appellee, v. THE VILLAGE OF NORTH-
BROOK, Defendant-Appellant.

First District (2nd Division)   No. 87—515

Opinion filed October 13, 1987.

Burke, Bosselman & Weaver, of Chicago (Clifford L. Weaver, Steven M.
Elrod, and Victor P. Filippini, Jr., of counsel), for appellant.

1002

Sidney Z. Karasik and Ronald H. Balson, both of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

On January 8, 1987, the trial court granted plaintiff Russell Stoller's (Stoller's) emergency motion for a temporary restraining order (TRO) against defendant village of Northbrook (village). The village then presented an emergency motion to reconsider the TRO that was entered on January 8, 1987. On January 13, 1987, the trial court denied the village's motion to reconsider. Pursuant to sections 11–108 and 11–110 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 11–108, 11–110), the village moved to dissolve the TRO. On February 10, 1987, the trial court denied the village's motion to dissolve the TRO. On February 18, 1987, pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307), the village filed a notice of appeal from the interlocutory order that was entered on February 10, 1987.

On December 22, 1986, Stoller filed a complaint for an injunction against the village. Stoller alleges that he is the owner of real property located at 1620 Pfingsten Road[1] in Northbrook, Illinois (subject property), upon which a single family dwelling is being constructed. On May 12, 1986, the village issued Stoller a building permit, water connection permit and sewer permit. Stoller alleges that after the village issued him these permits, the village "engaged in an illegal course of conduct designed to harass and injure plaintiff and cause him delay and expenses in the construction of his home." On or about May 30, 1986, the village notified Stoller via a letter that Stoller's building permit was improperly issued and was therefore null and void. The letter stated that the village ordered all work ceased until Stoller met four requirements. Stoller alleges that he fulfilled these requirements.

On June 18, 1986, Stoller received another letter from the village that stated that issuance of a formal building permit was contingent upon Stoller's getting approval from the Metropolitan Sanitary District of Greater Chicago (MSD). Stoller subsequently obtained an MSD permit. Stoller received yet another letter from the village on October 16, 1986. The October 16 letter informed Stoller that the village had placed a stop order on the subject property and that there were six items that the village had to receive from Stoller before the village

---

[1]The village points out that although both the village and Stoller have identified the subject property as being located at 1620 Pfingsten Road, the address is in fact 1640 Pfingsten Road.

would issue Stoller a valid building permit.

About October 22, 1986, Stoller corrected all of the deficiencies in his building permit application; the village then validated the issuance of a building permit and associated sewer and water permits. On or about November 18, 1986, Stoller submitted a revised engineering plan for proposed sewer and water line extensions. Stoller states that his sewer and water subcontractor was scheduled to begin work on the subject property on December 19, 1986. The village refused to allow Stoller's subcontractor to begin. Stoller alleges that the village required that Stoller give the village a 10-foot easement along the rear of the subject property. Stoller alleges that the easement for drainage is not required. Stoller further alleges that the village has wrongfully placed a work stop order on the subject property.

In his affidavit, Wayne Hanson (Hanson), director of development of the village, states that Stoller's November 18, 1986, proposed sanitary sewer extension was not in accordance with sewer plans that the village had approved. Hanson continues to state that such approval is contingent upon receipt of all grants of easement set forth in the revised engineering plan. This includes the grant of easement along the rear of the subject property. Hanson states that at the present time Stoller has not granted the village an easement. Hanson takes the position that easements are ordinarily granted as part of the building permit approval process. Hanson cites the following in support of his position: Northbrook Municipal Code sections 7.89, 7.110 and Northbrook Building Code section 1.7(e). The village, therefore, prohibited Stoller from beginning work on the subject property until the easement was granted.

Stoller did not choose to grant the village the requested easement. Instead, Stoller chose to file a complaint for injunction against the village. Stoller requested that the trial court enter an injunction that would prohibit the village from preventing construction on the subject property.

On December 22, 1986, Stoller and the village appeared before Judge Siegan. After hearing arguments on Stoller's TRO motion, Judge Siegan found that no emergency existed and continued the case to December 26, 1986. On December 26, 1986, Stoller brought a motion for change of venue and Judge Siegan granted Stoller's motion. The new trial judge assigned to the case was Judge Albert Green. On December 29, 1986, Stoller moved for a TRO before Judge Marovich, who was sitting for the absent Judge Green. Judge Marovich indicated that Stoller should place the TRO motion "on Judge Green's calendar for first thing Monday," January 5, 1987. It was not until

January 8, 1987, that Judge Green heard arguments on the motion.

The village and Stoller were both present before Judge Green at the January 8 hearing. Stoller argued that he should be allowed to hook up the water and sewer connections before the upcoming spring. Stoller argued that except for the water and sewer connections, his home was ready for occupancy. Stoller continued that he had four children and that they were living "hither and yon," "in motels," and were "very uncomfortable" because they had no home in which to live.

On the other hand, the village argued that Stoller simply had to comply with the permits. The village argued that the permits and plans did not only require easements for the sanitary and water main, but also an easement for a storm sewer. The village continued that Stoller's plans had showed the storm sewer easement and that the village had relied on those plans in issuing Stoller's permits. The village concluded that if Stoller merely provided the necessary easements, the village would allow Stoller to proceed. The village emphasized that Stoller must comply with the codes just like all of the village's other residents. Stoller then stated that he was prepared to show that all the property to the south of his property had no storm sewers or no easements for them.

Judge Green decided to let Stoller hook up the water and sewer connections and permit the Stoller family to occupy their new residence. Judge Green, however, told the village that its contention that it is entitled to an easement may still be pursued. Furthermore, Judge Green stated that if the village proves that Stoller had filed a plan showing a grant of easement to the village, Stoller would be required to give the village the easement. Thus, Judge Green granted Stoller's TRO motion on January 8, 1987.

On January 12, 1987, the village filed an emergency motion to reconsider the TRO that was entered on January 8, 1987. On January 13, 1987, Judge Green denied the village's motion to reconsider. The village, then, on January 29, 1987, moved to dissolve the January 8 TRO. On February 6, 1987, the village presented its motion to dismiss the complaint for injunction under section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619).

On February 10, 1987, the trial court denied the village's motion to dissolve the TRO and denied the village's motion to dismiss the complaint for injunction. On February 18, 1987, pursuant to Rule 307, the village filed a notice of appeal from the February 10 interlocutory order.

Two issues are before this court. The first issue is whether this

court has jurisdiction under Rule 307 to hear this case. The second issue is whether the trial court abused its discretion when it denied the village's motion to dissolve the TRO. We hold that this court does have jurisdiction and that the court below did not abuse its discretion when it denied the village's motion to dissolve the TRO.

■ We have jurisdiction to hear this case.[2] A motion to dissolve a TRO that is denied at the trial level is appealable under Rule 307. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.) In pertinent part, Rule 307 states:

"(a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from an interlocutory order of court:

(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction;

\* \* \*

The appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal designated 'Notice of Interlocutory Appeal' conforming substantially to the notice of appeal in other cases. The record must be filed in the Appellate Court within the same 30 days unless the time for filing the record is extended by the Appellate Court or any judge thereof." 107 Ill. 2d R. 307.

Jurisdiction only exists where a party files his notice of interlocutory appeal within the 30-day limitation. (107 Ill. 2d R. 307.) Furthermore, "a motion directed against an interlocutory order will not toll the running of the 30-day deadline for the filing of the notice of appeal." (*Trophytime, Inc. v. Graham* (1979), 73 Ill. App. 3d 335, 391 N.E.2d 1074.) For examples of cases dealing with these Rule 307 issues, see *Ben Kozloff, Inc. v. Leahy* (1986), 149 Ill. App. 3d 504, 501 N.E.2d 238; *Lake Shore Oil Co. v. Sovereign Oil Co.* (1981), 98 Ill. App. 3d 553, 424 N.E.2d 856; *In re Adoption of Anderson* (1980), 88 Ill. App. 3d 42, 410 N.E.2d 374; *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 405 N.E.2d 1316; *Trophytime, Inc. v. Graham* (1979), 73 Ill. App. 3d 335, 391 N.E.2d 1074; *Wise v. City of Chicago* (1962), 36 Ill. App. 2d 196, 183 N.E.2d 538.

In *Panduit*, the plaintiff was a corporation that manufactured a product called cable-tie. The defendant, Hood, had been an employee

---

[2]On March 26, 1987, Stoller requested that this court dismiss the village's appeal because this court lacked jurisdiction. This court denied Stoller's motion to dismiss on April 7, 1987. This, therefore, is the second time that this court has considered the jurisdictional issue.

of both the plaintiff and All States Corporation (All States), one of the plaintiff's competitors. The employment contract between Hood and the plaintiff contained a restrictive covenant. In January of 1979, Hood began to work for All States.

On February 26, 1979, the plaintiff filed a complaint against both Hood and All States. The plaintiff alleged that Hood was disclosing the plaintiff's trade secrets to All States and that All States was using the trade secrets in its own manufacturing. On February 26, 1979, the plaintiff also filed a motion for a TRO against Hood and All States. Following a hearing, the trial court granted the TRO and set a hearing to determine whether a preliminary injunction should be granted. The TRO went into effect on February 27, 1979. On March 5, 1979, Hood and All States moved to dissolve the TRO. The defendants' motion to dissolve the TRO was denied on March 15, 1979. The TRO was extended several times thereafter so as to give both sides the time needed to prepare for the preliminary injunction hearing.

A preliminary injunction against the defendants was issued on May 15, 1979. The preliminary injunction enjoined the defendants in basically the same way that the TRO did. Neither Hood nor All States moved to dissolve the preliminary injunction. On June 14, 1979, exactly 30 days after the preliminary injunction was issued, the defendants filed a notice of interlocutory appeal from the order granting the preliminary injunction. Oral argument was not heard until April 3, 1980, approximately three months after the preliminary injunction had expired.

On appeal, one of All States' contentions was that the trial court had improperly issued the TRO. (*Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 1150, 405 N.E.2d 1316.) The appellate court first stated the law: "A temporary restraining order or the denial of a motion to vacate or dissolve that order is an appealable order under Supreme Court Rule 307(a)(1)." (84 Ill. App. 3d 1144, 1150, 405 N.E.2d 1316.) In assessing the facts, the court noted that All States' March 5 motion to dissolve the TRO was made timely. The court, however, went on to state that All States cannot raise on this appeal the alleged impropriety of the TRO or the alleged error of the trial court in denying the motion to dissolve the TRO. 84 Ill. App. 3d 1144, 1150, 405 N.E.2d 1316.

The court reasoned that although All States had a right under Rule 307(a)(1) to appeal the grant of the TRO and the subsequent denial to dissolve the TRO, All States had only filed a notice of appeal attacking the May 15 order granting the preliminary injunction. The court noted that All States' motion to dissolve was denied on March

15, 1979, and that All States did not take an appeal from any order until June 14, 1979. The appellate court concluded that because All States did not take an appeal within 30 days of the trial court's order denying the motion to dissolve, All States could not now challenge that order on appeal. 84 Ill. App. 3d 1144, 1151, 405 N.E.2d 1316.

*Trophytime* also involved a dispute over an employment contract. The plaintiff employer sought to have the defendant, a former employee, enjoined from competing with the plaintiff. Following a hearing, the trial court denied the plaintiff's request for an injunction on August 30, 1978. On September 13, 1978, the plaintiff then filed a motion to vacate the August 30 order. The plaintiff's motion to vacate was denied on November 30, 1978. On December 27, 1978, the plaintiff filed a notice of interlocutory appeal.

The appellate court stated that the notice of interlocutory appeal was filed almost four months after the entry of the order being appealed. (*Trophytime, Inc. v. Graham* (1979), 73 Ill. App. 3d 335, 336, 391 N.E.2d 1074.) The court concluded that because the notice of appeal was not filed within 30 days from the entry of the interlocutory order denying the injunction, the court did not have jurisdiction to hear the case. 73 Ill. App. 3d 335, 336, 391 N.E.2d 1074.

In *Wise*, the defendants appealed from an order granting a temporary injunction against them. The defendants presented a motion to dissolve the temporary injunction. The court permitted the plaintiff to file an amended complaint. The defendants then renewed their motion to dissolve the temporary injunction. This motion was denied. The defendants then appealed from the order denying the motion to dissolve the injunction.

The plaintiff argued that the temporary injunction was not subject to review because the defendants had not perfected their appeal within the 30-day period. The plaintiff reasoned that the order issuing the temporary injunction was entered on November 15, 1961, and that the defendants had not timely filed their appeal. The appellate court, however, quickly pointed out that the issuance of the temporary injunction was not the order from which the defendants had appealed. The court stated that the defendants' appeal was taken from the order which denied the defendants' motion to dissolve the injunction. The court noted that section 78 of the Civil Practice Act (presently Rule 307) specifically provided for appeal from denial of a motion to dissolve an injunction. (*Wise v. City of Chicago* (1962), 36 Ill. App. 2d 196, 198, 183 N.E.2d 538.) The court stated that the denial of the defendants' motion to dissolve was entered on March 1, 1962. The court concluded that because the defendants filed within 30 days of

March 1, 1962, their notice of interlocutory appeal was timely.

■ In the case at bar, the village's motion to dissolve the TRO was denied on February 10, 1987. Under Rule 307, the village had to file notice of interlocutory appeal within 30 days of February 10, 1987. The village filed its notice of interlocutory appeal on February 18, 1987, well within the time limitation. Under the *Wise* case, the village was perfectly free to appeal the February 10 denial to dissolve the TRO even though it did not appeal the original issuance of the January 8 TRO. This court, therefore, has jurisdiction to hear this case.

The trial court did not abuse its discretion when it denied the village's motion to dissolve the TRO. For several years, Illinois trial courts have referred to preliminary injunctions as "preliminary injunctions, temporary injunctions, interlocutory injunctions, restraining orders, and interlocutory orders." (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 179, 303 N.E.2d 1.) Upon noting this confusion, the Illinois Supreme Court later concluded that a TRO issued with notice and a preliminary injunction issued with notice are essentially one and the same type of relief. (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B Graphic Arts International Union* (1976), 63 Ill. 2d 514, 524, 349 N.E.2d 36.) In the case at bar, the TRO against the village was issued with notice and after a hearing. For purposes of this opinion, therefore, the January 8, 1987, TRO will be treated as a preliminary/temporary injunction.

■ The dissolution of a temporary injunction lies within the broad discretion of the trial court. (*Eads Coal Co. v. United Mine Workers of America District 12* (1975), 27 Ill. App. 3d 692, 703, 327 N.E.2d 115.) The only issue before an appellate court when reviewing the grant or denial of an interlocutory order is whether the trial court properly exercised its broad discretionary powers. (*G. A. Carney, Ltd. v. Brzeczek* (1983), 117 Ill. App. 3d 478, 483, 453 N.E.2d 756; *Home Savings & Loan Association v. Samuel T. Isaac & Associates, Inc.* (1981), 99 Ill. App. 3d 795, 801, 425 N.E.2d 985.) Each substantive issue is only to be considered where it is necessary to determine whether the trial court abused its discretion. *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 691, 329 N.E.2d 414.

■ When a party presents a motion to dissolve a temporary injunction, it is only necessary that the party in whose favor the restraining order has been issued show to the trial court, in the statement of his case on the merits, that there is a fair question as to the existence of his rights. (*Schuler v. Wolf* (1939), 372 Ill. 386, 389, 24 N.E.2d 162.) If the party in whose favor the restraining order has

been issued shows, to the trial court's satisfaction, that the matter out of which his asserted rights arise should be preserved until a decision on the merits, then the trial court may deny the motion to dissolve the restraining order. See *Schuler v. Wolf* (1939), 372 Ill. 386, 389, 24 N.E.2d 162; *Shappert v. Roettger* (1976), 36 Ill. App. 3d 452, 457, 343 N.E.2d 695.

The issue before this court, therefore, is only whether the trial court abused its discretion when it denied the village's motion to dissolve the TRO. The village, however, argues that Stoller sought relief that could not be properly granted by a TRO. The village continues to argue that Stoller never met the standards for obtaining a TRO. The village's arguments, however, are irrelevant to this appeal. Were the village appealing from the original granting of the TRO, the village's arguments would be very much on point. Whether the trial court erroneously issued the TRO on January 8, 1987, is not before this court. If the village wished to attack the granting of the TRO it could have filed an interlocutory appeal pursuant to Rule 307(a)(1) within 30 days of the January 8 order. The only order at issue here is the February 10, 1987, order that denied the village's motion to dissolve the TRO.

■■ Based upon the facts of this case set forth above, the trial court had sufficient evidence to find that Stoller (the party in whose favor the TRO was issued) showed that the matter out of which his asserted rights arose should be preserved until a decision on the merits. The trial court, therefore, did not abuse its discretion when it denied the village's motion to dissolve the January 8 TRO and its judgment is affirmed.

Affirmed and remanded for further proceedings.

SCARIANO, P.J., and BILANDIC, J., concur.