JOHN DOE, Plaintiff-Appellee, v. THE DEPARTMENT OF PROFESSIONAL REGULATION *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—02—1045

Opinion filed June 26, 2003.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Erik G. Light, Assistant Attorney General, of counsel), for appellants.

Edward W. Williams, Ltd., of Chicago (Edward W. Williams, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

On August 8, 2001, the circuit court issued a preliminary injunction barring defendants, Illinois Department of Professional Regulation, Aurelia Pucinski, Director, Illinois Department of Professional Regulation, and Lucia Kubiatowski, chief administrative law judge, Illinois Department of Professional Regulation (collectively, the Department), from disclosing at any hearing any documents, records or testimony pertaining to plaintiff, John Doe, without first obtaining a confidentiality release from him. On March 14, 2002, the court denied the Department's motion to vacate entry of the injunction. The Department appeals from the circuit court's March 14, 2002 order.

On appeal, the Department argues that the court erred in finding that plaintiff had a right to nondisclosure of his mental health records because section 38 of the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/38 (West 2000)) (section 38) and section 7(a) of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (the Confidentiality Act) (740 ILCS 110/7(a) (West 2000)), authorized the use of a patient's redacted mental health records without his consent in a disciplinary proceeding against the patient's psychiatrist.

In 1999 the Department filed an administrative complaint against Dr. Marc Hugh Slutsky, a psychiatrist, alleging various violations of the Medical Practice Act with regard to his treatment of plaintiff. Specifically, the Department alleged that Dr. Slutsky failed to keep "contemporaneous and retrievable records of his treatment and evaluation" of "Patient X" and that Dr. Slutsky had prescribed controlled substances to "Patient X," including Vicodin.

On August 8, 2001, plaintiff filed a complaint for injunctive relief and an emergency motion for injunctive relief against the Department. Plaintiff alleged that he had been Dr. Slutsky's patient for 11 years and was the subject matter of the disciplinary proceeding against Dr. Slutsky. Plaintiff had not consented to allow any information regarding his identity or medical treatment to be the subject of testimony or evidence at Dr. Slutsky's disciplinary hearing. On August 8, 2001, during the course of Dr. Slutsky's disciplinary hearing, the Department asked questions regarding plaintiff and provided the administrative law judge (ALJ) and a member of the Illinois Medical Disciplinary Board a document from plaintiff's insurer without having redacted plaintiff's signature on the document. The Department intended to call as witnesses an insurance investigator and two Department investigators to testify regarding plaintiff's medical records. Plaintiff alleged that the Department breached his right to confidentiality in violation of the Confidentiality Act and the Medical Practice Act. Plaintiff also alleged that he would suffer irreparable harm unless the Department was enjoined from revealing any information regarding him without his consent; he had no adequate remedy at law; and he raised more than a fair question as to the existence of a right to a hearing.

Attached to the complaint was the affidavit of Lillian Walanka, in which she stated that during the August 8 disciplinary hearing regarding Dr. Slutsky, the Department's attorney referred to "Patient X" (plaintiff) during his opening statement; referred to medical records for "Patient X" which had been turned over to plaintiff's insurance provider; stated that Dr. Slutsky had failed to maintain controlled substance prescription records for "Patient X"; and stated that the Department intended to call an insurance investigator and two Department investigators to testify regarding "Patient X's" medical records. Walanka further averred that, during the hearing, the Department provided the ALJ and a medical disciplinary board member with an insurance authorization form containing the unredacted signature of "Patient X."

On August 8, 2001, following hearing on the emergency motion, the circuit court found, as part of its order, that plaintiff: (1) "has an

ascertainable right in need of protection"; (2) "has a right to non-disclosure of his mental health records"; (3) "does not have an adequate remedy at law"; and (4) "has a likelihood of success on the merits." The court ordered that "defendants are prohibited from disclosing in any hearing any documents, records or testimony pertaining to John Doe without a confidentiality release from John Doe" and "all records, evidence or transcript of the current proceedings related to John Doe shall be impounded until such time as it can be ascertained how to safely dispose of them." The order was to "remain in effect until further order of the court." The court then set the case for a status date, giving the Department the opportunity to fully review the material and file a responsive pleading.

On September 7, 2001, the Department filed a "Motion to Vacate or Reconsider Entry of Injunction" (motion to vacate). On March 14, 2002, following argument, the circuit court denied the Department's motion. On April 12, 2002, the Department filed a notice of interlocutory appeal, appealing the orders of August 8, 2001, and March 14, 2002.

On May 1, 2002, an order dismissing the appeal for lack of jurisdiction was improvidently entered and the Department's motion to vacate the May 1, 2002, order was granted on May 17, 2002. In its motion to vacate the May 1, 2002, order, the Department admitted that the notice of interlocutory appeal was untimely as to the circuit court's August 8, 2001, order. Only the March 14, 2002, order is at issue in this appeal.

## I

■ The parties first dispute whether or not this court has jurisdiction to consider this appeal. In its jurisdictional statement, the Department claims that this court has jurisdiction pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)) (Rule 307(a)), which provides:

"An appeal may be taken to the Appellate Court from an interlocutory order of court:

(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction[.]

\* \* \*

Except as provided in paragraph (b) and (d), the appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal designated 'Notice of Interlocutory Appeal' conforming substantially to the notice of appeal in other cases."

The Department characterizes its motion to vacate as a motion to dissolve the preliminary injunction and the circuit court's March 14,

2002, order as one that refused to dissolve the preliminary injunction and, therefore, is appealable under Rule 307(a)(1). See *Stoller v. Village of Northbrook*, 162 Ill. App. 3d 1001, 516 N.E.2d 355 (1987) (*Stoller*) (appeal filed within 30 days from entry of order refusing to dissolve temporary restraining order was timely); *Wise v. City of Chicago*, 36 Ill. App. 2d 196, 183 N.E.2d 538 (1962).

Plaintiff rejects the Department's argument that its motion to vacate was, in substance, a motion to dissolve the preliminary injunction. Relying on *Trophytime, Inc. v. Graham*, 73 Ill. App. 3d 335, 391 N.E.2d 1074 (1979) (*Trophytime*), plaintiff argues that because the notice of interlocutory appeal was not filed within 30 days from the date of entry of the interlocutory order, August 8, 2001, and the running of the 30-day period was not tolled by the filing of the Department's motion to vacate the August 8, 2001, order, this appeal must be dismissed for lack of jurisdiction. *Trophytime* is distinguishable.

In *Trophytime*, plaintiff sought an injunction against defendant to prohibit him from competing. An interlocutory order denying plaintiff's request was entered on August 30, 1978. On September 13, 1978, plaintiff filed a motion to vacate the August 30 order in which it sought a rehearing or, in the alternative, leave to amend its complaint. The motion was denied on November 30, 1978, and on December 27, 1978, plaintiff filed a notice of interlocutory appeal. Finding that the notice of interlocutory appeal was filed almost four months after the entry of the order being appealed, *i.e.*, the August 30, 1978 order, the appellate court concluded that it lacked jurisdiction.

■ Unlike *Trophytime*, the substance of the Department's motion in the present case sought either vacatur or reconsideration of the court's prior ruling. Whether the motion was entitled "Motion to Vacate or Reconsider Entry of Injunction" or motion to dissolve is of no significance; whether termed a motion to vacate or a motion to dissolve, in substance part of the relief requested was dissolution of the preliminary injunction.[1] The supreme court has held that the character of a pleading is to be determined from its content not its label. *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 492 N.E.2d 1327 (1986) (*Kemner*). In its motion to vacate, the Department argued that there was no basis for injunctive relief because plaintiff's rights under the Confidentiality Act were not violated where the underlying disciplinary action against Dr. Slutsky involved only the existence of medical

---

[1]Although the word "dissolve" is more specific, when a court "vacates" an order, the effect is "[t]o nullify or cancel; make void; invalidate." Black's Law Dictionary 1546 (7th ed. 1999). The effect would be the same as dissolution under these circumstances.

records for plaintiff and not the efficacy of the treatment plaintiff received. The Department further argued that section 38 enabled it to refer to plaintiff's medical records in an administrative proceeding provided that all information indicating plaintiff's identity was removed.

Plaintiff argues that the motion to vacate contained no citation to any authority regarding motions to dissolve injunctions and no argument claiming that the standards for dissolution were met in this case. Citing *United States v. Swift & Co.*, 286 U.S. 106, 76 L. Ed. 999, 52 S. Ct. 460 (1932), *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 20 L. Ed. 2d 562, 88 S. Ct. 1496 (1968), and *United States v. City of Chicago*, 663 F.2d 1354 (7th Cir. 1981), plaintiff argues that the standards for dissolution include hardship to the enjoined party or a change of circumstances obviating the need for the injunction. Plaintiff's cases are inapposite as they involve permanent injunctions.

■ Courts have the inherent power to review, modify, or vacate an interlocutory order at any time before final judgment. *Catlett v. Novak*, 116 Ill. 2d 63, 506 N.E.2d 586 (1987); *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 382 N.E.2d 1217 (1978). See also *Doe v. Doe*, 282 Ill. App. 3d 1078, 668 N.E.2d 1160 (1996); *Patrick Media Group, Inc. v. City of Chicago*, 252 Ill. App. 3d 942, 626 N.E.2d 1062 (1993); *Kraft v. Solon*, 32 Ill. App. 3d 557, 336 N.E.2d 577 (1975) (*Kraft*). The court may dissolve a preliminary injunction absent a change in facts or law from the time of issuance to the time of dissolution, provided a sufficient basis exists to support dissolution (*Kraft*, 32 Ill. App. 3d at 561) and regardless of the order's immediate appealability. *Kemner*, 112 Ill. 2d at 240-42; *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 730 N.E.2d 524 (2000). There is no language in Rule 307(a) prohibiting a post-preliminary injunction motion to vacate.

■ In summary, the Department's motion to vacate was, in part and in effect, a motion to dissolve the preliminary injunction, the denial of which was appealable under Rule 307(a)(1). This court has jurisdiction over the instant appeal because the Department's notice of interlocutory appeal was filed within 30 days of the March 14, 2002, order.

II

■ The parties also dispute whether this court should apply an abuse of discretion or *de novo* standard of review. As plaintiff points out, and the Department concedes, in an interlocutory appeal, the scope of review normally is limited to an examination of whether or not the circuit court abused its discretion in granting or denying the

requested interlocutory relief. *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 596 N.E.2d 712 (1992); *Stoller*, 162 Ill. App. 3d at 1008.

In the present case, the circuit court's order was made in the absence of any findings as to factual issues; it was based on the conclusion that, as a matter of law, plaintiff had a right to nondisclosure of his mental health records under the Confidentiality Act. The court's ruling construing the statute will be reviewed *de novo*. See *Peregrine Financials & Securities v. Hakakha*, 338 Ill. App. 3d 197 (2003); *People v. Studio 20, Inc.*, 314 Ill. App. 3d 1000, 733 N.E.2d 451 (2000).

## III

The Department contends that the circuit court's March 14, 2002, order should be reversed and the case remanded with directions to dissolve the preliminary injunction. Specifically, the Department argues that the court erred in finding that plaintiff had a right to nondisclosure of his mental health records because section 38 of the Medical Practice Act and section 7(a) of the Confidentiality Act authorized the use of plaintiff's mental health records in the disciplinary proceeding against Dr. Slutsky, provided that the Department removed information indicating plaintiff's identity.

In interpreting a statute, the court must ascertain and give effect to the intent of the legislature. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 649 N.E.2d 369 (1995). The language of the statute provides the best evidence of that intent. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 561 N.E.2d 656 (1990). Statutes should be evaluated in their entireties and each provision should be construed in connection with every other section. *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 744 N.E.2d 902 (2001).

Section 38 authorizes the Department to subpoena the medical or hospital records for individual patients of physicians licensed under the Medical Practice Act and to use those records in a disciplinary hearing against such a physician, as long as all information indicating the identity of the patient is removed.[2] The Medical Practice Act regulates the practice of medicine in all its branches, including

---

[2]Section 38 provides in pertinent part:

"The Disciplinary Board, upon a determination that probable cause exists that a violation of one or more of the grounds for discipline listed in Section 22 has occurred or is occurring, may subpoena the medical and hospital records of individual patients of physicians licensed under this Act, provided, that prior to the submission of such records to the Disciplinary Board, all information indicating the identity of the patient shall be removed and deleted. *** All medical

psychiatry. See 225 ILCS 60/2 (West 2000) (defining "physician" as "a person licensed under the Medical Practice Act to practice medicine in all of its branches"); 225 ILCS 60/3 (West 2000) ("No person shall practice medicine, or any of its branches," without a valid, existing license). Therefore, section 38 applies to disciplinary proceedings against psychiatrists.

■ Section 7(a) provides in pertinent part:

"When a therapist or agency which provides services is being reviewed for purposes of licensure, statistical compilation, research, evaluation, or other similar purpose, a recipient's record may be used by the person conducting the review to the extent that this is necessary to accomplish the purpose of the review, provided that personally identifiable data is removed from the record before use. Personally identifiable data may be disclosed only with the consent obtained under Section 5 of this Act." 740 ILCS 110/7(a) (West 2000).

■ Section 7(a) applied to the disciplinary proceeding against Dr. Slutsky because such proceedings fall under the ambit of the "other similar purpose" language. As a psychiatrist, Dr. Slutsky is a "therapist" for purposes of the Confidentiality Act. See 740 ILCS 110/2 (West 2000) (defining "therapist" as *inter alia* a psychiatrist.) Dr. Slutsky was being reviewed for possible license revocation or suspension. This type of review is similar to a licensure review as both involve a determination of whether a therapist should possess a license in the future. Without merit is plaintiff's argument that section 7(a)'s reference to "statistical compilation," "research," and "evaluation" indicates that the legislature enacted section 7(a) "for situations involving analysis of mass data (e.g. developmentally disabled nursing home record review, licensure of mental health facilities), where a mass redaction of patient names sufficiently serves the patients' privacy interest." Section 7(a) clearly states that "[w]hen a therapist

---

records and other information received pursuant to subpoena shall be confidential ***. The use of such records shall be restricted to members of the Disciplinary Board, the medical coordinators, and appropriate staff of the Department of Professional Regulation designated by the Disciplinary Board for the purpose of determining the existence of one or more grounds for discipline of the physician as provided for by Section 22 of this Act. Any such review of individual patients' records shall be conducted by the Disciplinary Board in strict confidentiality, provided that such patient records shall be admissible in a disciplinary hearing, before the Disciplinary Board, when necessary to substantiate the grounds for discipline alleged against the physician licensed under this Act ***." 225 ILCS 60/38 (West 2000).

\*\*\* is being reviewed for purposes of licensure, \*\*\* or other similar purpose, a recipient's record may be used." 740 ILCS 110/7(a) (West 2000).

Plaintiff argues that the Confidentiality Act, not the Medical Practice Act, governs disclosure of mental health records. Section 3(a) of the Confidentiality Act (740 ILCS 110/3(a) (West 2000)) provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." The privilege against disclosure is not absolute, however, and the Confidentiality Act provides several exceptions. Section 10 of the Confidentiality Act (740 ILCS 110/10 (West 2000)) (section 10) provides that "[e]xcept as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." Section 10 sets forth 11 exceptions, none of which apply in this case. Nevertheless, the parties agree that section 10 does not contain an exhaustive list of the exceptions to a patient's privilege against the disclosure of his mental health records. The Department argues that section 7(a) constitutes another exception to section 10. Plaintiff rejects this argument, contending that section 10, not section 7(a), applies to administrative disciplinary proceedings and bars the Department's use of plaintiff's records in the disciplinary proceeding against Dr. Slutsky.

When the Confidentiality Act is read as a whole, it is clear that the legislature contemplated the use of mental health records for which no consent has been secured in certain judicial proceedings. See 740 ILCS 110/9.3 (West 2000) (providing for nonconsenting disclosures by therapists in civil commitment proceedings under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2000))); 740 ILCS 110/11(ii) (West 2000) (providing for nonconsenting disclosure when a therapist "determines that disclosure is necessary to initiate or continue civil commitment proceedings under the laws of this State"); 740 ILCS 110/11(vi) (West 2000) (providing for nonconsenting disclosure of mental health records in certain judicial proceedings under the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—101 *et seq.* (West 2000))). The "except as provided herein" language in section 10 therefore refers to the statute as a whole and not solely to the 11 exceptions listed in section 10. Section 7(a) must be construed as an additional exception to section 10.

This construction of section 10 and section 7(a) of the Confidentiality Act and section 38 of the Medical Practice Act promotes the goals of both Acts. Patients remain anonymous, thereby preserving a suf-

ficient level of privacy necessary to encourage other people to seek mental health treatment, which is the goal of the Confidentiality Act. See *Norskog v. Pfiel*, 197 Ill. 2d 60, 755 N.E.2d 1 (2001) (*Norskog*) (the reason for according confidentiality to mental health records is that "people will increasingly avail themselves of needed treatment if they are confident that their privacy will be protected"); *House v. Swedish American Hospital*, 206 Ill. App. 3d 437, 564 N.E.2d 922 (1990) (noting that the Confidentiality Act was enacted to protect patient's privacy rights and to provide an inducement to seeking mental health treatment.) At the same time, it enables the Department to enforce standards of practice for the psychiatric profession and protect the public from those not qualified to practice medicine, which is the goal of the Medical Practice Act. See *Metz v. Department of Professional Regulation*, 332 Ill. App. 3d 1033, 773 N.E.2d 1234 (2002).

Plaintiff provides several arguments to support his position that section 10 rather than section 7(a) applies to administrative disciplinary hearings. They are without merit. First, plaintiff argues that Illinois courts consistently have applied section 10 to administrative disciplinary hearings. Plaintiff cites *Goldberg v. Davis*, 151 Ill. 2d 267, 277, 602 N.E.2d 812 (1992) (*Goldberg*), in which the supreme court stated that "[i]t is section 10 that provides for unconsented disclosure in administrative proceedings." In *Goldberg*, a psychiatrist, who was a defendant in a disciplinary proceeding, sought to compel production of certain medical records from the patient's current treating psychiatrist. Relying on section 10(a)(1), the court held that the medical records should be disclosed for an *in camera* inspection because the patient had introduced her mental condition as well as services received as part of the Department's complaint. *Goldberg* did not involve an attempt by the Department to rely on its subpoena power under section 38, nor did it involve a claim by the Department that it was entitled to a patient's mental health records under section 7(a).[3]

Plaintiff next argues that the Department overtly and tacitly has adopted section 10 for use in disciplinary proceedings. Plaintiff points out that in the underlying disciplinary proceeding against Dr. Slutsky, an ALJ rejected the Department's attempt to rely on section 7(a). Such rulings are not binding on this court. Plaintiff claims that the

---

[3]Plaintiff also cites *Bland v. Department of Children & Family Services*, 141 Ill. App. 3d 818, 490 N.E.2d 1327 (1986), *Chicago Housing Authority v. Human Rights Comm'n*, 325 Ill. App. 3d 1115, 759 N.E.2d 37 (2001), and *Norskog*. All are inapposite as they do not involve disciplinary proceedings before the Department or an attempt by the Department to subpoena and use mental health records pursuant to section 38 and section 7(a).

Department has incorporated the consent requirement in numerous provisions of the Clinical Psychologist Licensing Act and rules. See 225 ILCS 15/5, 15(7) (West 2000); 68 Ill. Adm. Code § 1400.80(b) (2002).[4] That Administrative Code section does not adopt section 10 of the Confidentiality Act, nor is it limited to section 10. It provides that a clinical psychologist's license may be revoked if the psychologist revealed data or information relating to a client "except as allowed *** under the Mental Health and Developmental Disabilities Confidentiality Act."[5] 68 Ill. Adm. Code § 1400.80(b) (2002).

Plaintiff maintains that section 10 rather than section 7(a) applies to disciplinary proceedings and protects patient confidentiality; however, it also inhibits the Department's ability to ensure that psychiatrists comply with the Medical Practice Act. Moreover, plaintiff's argument that psychiatric patients must give their consent before their records may be used in a disciplinary proceeding against a psychiatrist assumes that all such patients have the legal capacity to consent. Section 7(a) is an exception to section 10, and section 7(a) and section 38 of the Medical Practice Act allow the Department to utilize plaintiff's mental health records in the disciplinary proceeding against Dr. Slutsky "provided that personally identifiable data is removed from the records before such use."

Plaintiff insists that the supreme court's recent decision in *People ex rel. the Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 782 N.E.2d 237 (2002) (*Manos*), is dispositive. In *Manos*, the Department issued subpoenas to two dentists, who were subjects of an administrative investigation by the Department, requesting, *inter alia*, complete dental records for two patients. The court rejected the Department's argument that its broad investigatory powers under the Civil Administrative Code of Illinois (20 ILCS 2105/60 *et seq.* (West 2000)), and the Illinois Dental Practice Act (225 ILCS 25/1 *et seq.* (West 2000)), prevailed over the statutorily enacted physician-patient privilege (735 ILCS 5/8—802 (West 2000)). The court noted that the legislature specifically delineated 10 exceptions to the physician-patient privilege, none of which refer to the investigatory powers of the Department. See 735 ILCS 5/8—802 (West 2000). Because none of the statutory exceptions to the privilege applied, the court concluded that the physician-patient privilege prevented defendants from producing any confidential patient dental records.

---

[4]It should be noted that the Clinical Psychologist Licensing Act does not apply to Dr. Slutsky, a psychiatrist.

[5]Plaintiff also claims that the Department's own medical records release forms follow the consent provision in section 10. The record on appeal does not contain copies of any of these medical records release forms.

*Manos* is not in point, however, since there a different type of disciplinary proceeding and different types of records were involved. Therefore, the source of the claimed privilege and the source of the Department's authority here to overcome the claimed privilege differ from those at issue in *Manos*. Moreover, in *Manos*, the Department did not rely on a statutory exception to the privilege at issue as it does here. In the present case the Department does not argue, as it did in *Manos*, that its statutory power to subpoena medical records under section 38 prevails over plaintiff's statutory privilege to keep those records confidential. Rather, the Department contends that a specific provision of the Confidentiality Act, namely section 7(a), supports the Department's authority under section 38 to subpoena and use medical records in a disciplinary proceeding. Unlike *Manos*, where the Department argued that one statute prevailed over the other, in the case *sub judice* the Department posits that both section 38 of the Medical Practice Act and section 7(a) of the Confidentiality Act allow the Department to use plaintiff's mental health records in the disciplinary proceeding against Dr. Slutsky, "provided that personally identifiable data is removed from the record before such use."

For the reasons set forth above, the judgment of the circuit court of Cook County is reversed and remanded with directions to dissolve the preliminary injunction entered on August 8, 2002.

Reversed and remanded with directions.

THEIS, P.J., and KARNEZIS, J., concur.