2020 IL App (2d) 200339
No. 2-20-0339
Opinion filed July 22, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| THE McHENRY COUNTY SHERIFF | ) Appeal from the Circuit Court |
| | )   of McHenry County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) Nos. 20-MR-373, 20-MR-387 |
| | ) |
| THE McHENRY COUNTY DEPARTMENT | ) |
| OF HEALTH, | ) |
| | )   Honorable |
| Defendant-Appellant | )   Michael J. Chmiel, |
| | )   Judge, Presiding. |

| | |
|---|---|
| THE CITY OF McHENRY; | ) |
| THE VILLAGE OF ALGONQUIN; | ) |
| THE CITY OF WOODSTOCK; and | ) |
| THE VILLAGE OF LAKE IN THE HILLS, | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) No. 20-MR-387 |
| | ) |
| MELISSA H. ADAMSON, in | ) |
| Her Official Capacity as Public Health | ) |
| Administrator for the McHenry County | ) |
| Department of Health, and THE McHENRY | ) |
| COUNTY DEPARTMENT OF HEALTH, | ) Honorable |
| | )   Michael J. Chmiel, |
| Defendants-Appellants. | )   Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Zenoff and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1 On April 10, 2020, plaintiffs, the McHenry County Sheriff (Sheriff), and the City of McHenry, the Village of Algonquin, the City of Woodstock, and the Village of Lake in the Hills (collectively, the Municipalities) obtained a temporary restraining order requiring defendants, the McHenry County Department of Health and Melissa H. Adamson, in her official capacity as public health administrator for the McHenry County Department of Health (collectively, the Department), to disclose to the McHenry County Emergency Telephone System Board (Telephone System Board) the names and addresses of persons who reside in McHenry County and test or have tested positive for the illness denominated COVID-19. The Department moved to reconsider and to dissolve the temporary restraining order, and the circuit court of McHenry[1] County denied the motion. The Department now appeals, pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017), the trial court's judgment denying its motion to reconsider and to dissolve the temporary restraining order. We reverse and dissolve the temporary restraining order.

¶ 2                              I. BACKGROUND

¶ 3 Late in 2019, COVID-19 was identified as a novel coronavirus and the cause of a severe respiratory illness. In March 2020, the World Health Organization announced that the spread of COVID-19 qualified as a global pandemic. In response, our governor took measures to reduce the spread and contraction of the illness throughout the state, with the responsibility of enforcement shouldered by local law enforcement.

---

[1] Each plaintiff requested the information about persons residing within its respective jurisdiction. For simplicity and in light of the specific relief the trial court granted−disclosure to *all* police officers in McHenry County, not to only the officers in the Sheriff's and each Municipality's police departments (*infra* ¶ 11)−we will aggregate the parties' various requests into a singular request for the information about persons who reside in McHenry County.

¶ 4 Plaintiffs were understandably concerned that their law enforcement officers' performance of their duties would be made more dangerous by the risk of exposure and infection; plaintiffs therefore requested that the Department provide the names and addresses of persons who reside in McHenry County and test or have tested positive for COVID-19. Plaintiffs requested that the information be provided to the Telephone System Board, which oversees the emergency telephone system, so that, upon dispatch, individual police officers could be notified when they could be encountering an infected person, thereby allowing the individual officers to take "adequate precautions" to minimize the risk of infection. Plaintiffs alleged that, with the requested information routed through the emergency telephone system and dispatch, individual officers could not independently, by using the tools in their possession, obtain the names of infected persons. The implication from this allegation was apparently that this method would adequately safeguard the sensitive health information of COVID-19-positive persons, preventing or minimizing the risk of unauthorized disclosure.

¶ 5 The Department had several objections to plaintiffs' request. The information sought was protected health information under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of Titles 18, 26, 29, and 42 of the United States Code)). The information sought would be ineffective for the purpose of protecting individual police officers, because, due to deficiencies in testing for infections, the estimated infection count was believed to be some 10 times greater than the reported confirmed infections and there was concern that the illness could be spread through asymptomatic infected persons. The Department also believed that the information sought had little epidemiological value in terms of limiting the spread of COVID-19. Further, the Department believed that the information sought could actually be harmful to the police, because it might give an officer a false sense of security that a person with whom he or she was interacting

was not infected, whereas the person could have been infected but had not tested or was asymptomatic. According to the Department, the emergency telephone operators had been given guidance on questions to ask to ascertain the likelihood that a person needing an emergency response had been infected, and this information would be more up-to-date and more reliable than information just listing those who had tested positive.[2] Instead, the Department agreed to provide the addresses, but not the names, of persons who test or have tested positive. The justification was that, if one person at an address had been infected, then all persons residing at the address had likely been exposed and were possibly infected. Finally, the Department adamantly recommended that police officers should govern all their interactions with members of the public as if both they and the other individuals were infected. Plaintiffs and the Department could not reach an agreement regarding the disclosure of the requested information.

¶ 6 On April 7, 2020, the Sheriff and the Municipalities each filed a three-count complaint. In each complaint, count I sought a declaratory judgment, count II sought a writ of mandamus, and count III sought a permanent injunction. All counts sought exactly the same relief: that the Department provide to the Telephone System Board the names and addresses of all individuals who reside in the county and test or have tested positive for COVID-19. The Sheriff and the Municipalities also each filed an emergency motion: the Sheriff filed an emergency motion for a preliminary injunction and the Municipalities filed an emergency motion for a temporary restraining order and preliminary injunction. The motions sought substantially the same relief as in the complaints (hereinafter, we refer to these motions collectively as "plaintiffs' motions for a

---

[2] Of course, this does not necessarily apply to a police officer responding to a law enforcement emergency instead of a first responder (which could include a police officer) responding to a health emergency.

temporary restraining order"). The Municipalities attached to their complaint copies of documents from the United States Department of Health and Human Services and from the Illinois Department of Public Health indicating that, under an exception to HIPAA, local health departments, like the Department, were permitted to disclose "information regarding individuals with positive tests for COVID-19" to law enforcement officers and other first responders.

¶ 7 Before the suit was filed, both the Sheriff and the Department were being advised by members of the state's attorney's office. At some point, when it was apparent that the conflict over the requested information would not be resolved through negotiation, the state's attorney's office advised the Department that it would no longer represent the Department but would continue to represent the Sheriff, so the Department would have to find alternate representation. Indeed, on April 7, 2020, the state's attorney filed an emergency petition for the appointment of independent counsel to represent the Department. On April 9, 2020, the trial court made the appointment.

¶ 8 In the unsettled period between the state's attorney announcing its intent to withdraw representation of the Department and the appointment of independent counsel, the Department and the attorney who was ultimately appointed worked to craft the Department's response in opposition to the pending motion for a temporary restraining order. According to the Department, it began working with its attorney on April 8, 2020, in anticipation of an April 9 hearing. However, the trial court, *sua sponte*, advanced the hearing from the morning of April 9 to 3 p.m. on April 8. At the April 8 hearing, the state's attorney objected to the Department's choice of attorney, further complicating the Department's ability to respond, because, as noted, the Department's attorney was not definitively appointed until "late the next day," on April 9. The Department represents that, at the April 8 hearing, it submitted a draft of its response to plaintiffs' motions for a temporary restraining order, and it now claims that, had it had the full amount of time, as originally scheduled, to craft a response, it would have submitted something very like what ultimately became its motion

to reconsider and to dissolve the temporary restraining order. Instead, the Department filed the admittedly imperfect response appearing in the supporting record.

¶ 9 On April 8, 9, and 10, 2020, the parties engaged in several hearings. The trial court attempted to coax the parties to negotiate and settle their differences, to no avail. The parties appear to agree that all parties fully participated in those hearings and that they were able to submit meaningful pleadings regardless of the Department's later disappointment in the completeness of its original written response. It also appears that the issues regarding the temporary restraining order were heard, although the record is not entirely clear as to whether a hearing was conducted expressly litigating the motions for a temporary restraining order and the response.

¶ 10 On Friday, April 10, 2020, the trial court granted plaintiffs' motions for a temporary restraining order. Pertinently, the court determined that plaintiffs had demonstrated "a certain and clearly ascertainable right needing protection," namely:

> "the right of police officers to have the names of individuals who reside in McHenry County and who are infected with COVID-19, available through the McHenry County Emergency Telephone System Board, where these names can be secured to protect the privacy rights of individuals under the law, for use by police officers without unnecessary dissemination, and will serve to assist police officers in the performance of their duties to the best of their ability."

The court determined that the Department had conceded that the requested information "could be helpful to first responders" (emphasis omitted). The court also reasoned that police officers were different from ordinary citizens in that they are required to interact with potentially infected persons as part of their sworn duties, so providing the requested information could best enable police officers to perform their jobs and protect themselves and the community to the fullest extent possible.

¶ 11 The trial court entered the temporary restraining order requiring the Department to "disclose the names and addresses of all individuals that reside within McHenry County, Illinois, that are positive for COVid-19 [*sic*] to" the director of the Telephone System Board and no more than two other named designees, "to be entered into its Premise Alert Program, for use by all police officers in McHenry County." The court also ordered a seven-day limitation on the retention of the names and addresses and other provisions designed to protect the confidentiality of the health information to the extent possible. The court ordered that the temporary restraining order remain in effect "pending hearing on Plaintiffs' requests for preliminary injunction," the hearing for which it scheduled 10 days later, on April 20, 2020.

¶ 12 On Tuesday, April 14, 2020, two days after the entry of the temporary restraining order, the Department filed a motion to reconsider and to dissolve the temporary restraining order. The trial court ordered that the temporary restraining order continue in force and effect while the Department's motion was briefed and until plaintiffs' motions for a preliminary injunction were decided. During the pendency of the Department's motion, the League of United Latin American Citizens of Illinois (League) filed an emergency petition to intervene as a defendant. On May 26, 2020, the court denied the League's petition to intervene.

¶ 13 On June 1, 2020, the trial court heard the parties' arguments on the Department's motion to reconsider and to dissolve the temporary restraining order. On June 16, 2020, the trial court denied the motion to reconsider and to dissolve. In its decision, the court acknowledged first that a temporary restraining order is designed to maintain the status quo until a hearing on the merits can be held. The court then recounted the elements necessary to entitle a party to the entry of a temporary restraining order: (1) the party possesses a certain and clearly ascertainable right in need of protection, (2) the party lacks an adequate remedy at law, (3) the party will experience irreparable harm without the protection of the temporary restraining order, and (4) the party has a

likelihood of success on the merits. Against that backdrop, the trial court assessed its entry of the temporary restraining order and then addressed the motion to reconsider and to dissolve.

¶ 14 The trial court briefly noted the standards governing a motion to reconsider a judgment under section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2018)), as well as for a motion to dissolve a temporary restraining order under section 11-108 of the Code (735 ILCS 5/11-108 (West 2018)). Importantly, the court emphasized: "to underscore the essential crux of the Court's finding in granting the [temporary restraining order (TRO)], under State and Federal law ***, *the Defendants have the discretion to provide the requested information*" (emphasis added). The court urged the parties to settle the matter through alternative dispute resolution or other less adversarial measures. The court then denied the motion to reconsider and to dissolve the temporary restraining order, referred the matter to mediation, and continued all orders (including the temporary restraining order) in effect.

¶ 15 On June 17, 2020, the Department filed its notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017). On the same date, Health & Medicine Policy Research Group, the Illinois Coalition for Immigrant and Refugee Rights, and the League moved for leave to file an *amicus curiae* brief in the instant matter, which we granted.

¶ 16                                      II. ANALYSIS

¶ 17 On appeal, the Department argues that the trial court erred in denying its motion to reconsider and to dissolve. Specifically, the Department contends that the trial court (1) usurped the Department's authority and impermissibly substituted its judgment for the Department's, (2) improvidently granted the temporary restraining order, because plaintiffs could not meet the necessary standards for such an order, and (3) failed to accord proper weight to the privacy rights of the individuals affected by the compelled disclosure of their names.

¶ 18                               A. Governing Principles

¶ 19 The parties sharply disagree about the scope of our review in this appeal. However, before we can reach that question, we must first determine which of the parties' arguments are properly before us. Plaintiffs characterize the Department as effectively appealing the issuance of the temporary restraining order and they argue that, for various reasons, this ought not to stand. Instead, according to plaintiffs, we have jurisdiction only over the trial court's judgment denying the Department's motion to reconsider and to dissolve. We agree that the Department's arguments seem to attack the issuance of the temporary restraining order, and it does not fully explain how the arguments relate to the judgment denying its motion to reconsider and to dissolve.

¶ 20 Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017) generally governs taking an interlocutory appeal from a trial court's decision on some sort of an injunction. Rule 307(d) particularly applies to the appeal of a trial court's decision on a temporary restraining order, allowing for the "review of the granting or denial of a temporary restraining order or an order modifying, dissolving, or refusing to dissolve or modify a temporary restraining order" and requiring the aggrieved party to file a notice of appeal "within two days of the entry or denial of the order from which review is being sought." Ill. S. Ct. R. 307(d)(1) (eff. Nov. 1, 2017). It is well settled that the time for filing a notice of appeal from an interlocutory order will not be tolled by a motion in the trial court, such as a motion to reconsider, attacking the order appealed from. *Ben Kozloff, Inc. v. Leahy*, 149 Ill. App. 3d 504, 507 (1986). Thus, to appeal the April 10, 2020, issuance of the temporary restraining order, the Department was required to file its notice of appeal no later than April 14, 2020. Instead of filing a notice of appeal, however, the Department filed a motion to reconsider and to dissolve the temporary restraining order. Under Rule 307(d) and longstanding authority like *Ben Kozloff*, the issuance of the temporary restraining order is clearly off the appellate table as a direct matter. This means that we cannot and will not entertain arguments suggesting that the trial court abused its discretion in issuing the temporary restraining

order. Nevertheless, while direct review of the issuance is barred, such review may still be approached in other ways.

¶ 21 That leaves us with the June 16, 2020, order denying the Department's motion to reconsider and to dissolve. For similar reasons as outlined above, it would seem that the motion-to-reconsider portion of the motion would likewise be off the table, as those arguments would necessarily be a direct attack on the issuance of the temporary restraining order. Once again, Rule 307(d) and longstanding authority would bar our consideration of the motion-to-reconsider arguments. However, the remainder, namely, the specific arguments addressed to dissolving the temporary restraining order, clearly can be addressed. Rule 307(d)(1) expressly provides for appellate "review of the granting or denial of a temporary restraining order or an order modifying, dissolving, or refusing to dissolve or modify a temporary restraining order." The trial court's June 16, 2020, order denied the Department's request to dissolve the temporary restraining order, and the Department filed its notice of appeal on June 17, 2020. We therefore may entertain the Department's appeal to the extent that it challenges the denial of its motion to dissolve.

¶ 22 Our inquiry thus turns to the propriety of the trial court's denial of the motion to dissolve. Whether to dissolve a temporary injunction is committed to the broad discretion of the trial court. *Stoller v. Village of Northbrook*, 162 Ill. App. 3d 1001, 1008 (1987). The only issue before the appellate court when reviewing the denial of a motion to dissolve a temporary restraining order is whether the trial court abused its discretion. *Id.* at 1009. Substantive issues are to be considered only insofar as it is necessary to determine whether the court abused its discretion. *Id.* at 1008. Arguments pertaining to the issuance of the restraining order but unnecessary to resolving the question of the court's exercise of discretion in ruling on the motion to dissolve are irrelevant. *Id.* at 1009. That, of course, implies the converse to be true as well: arguments pertaining to the issuance *and* necessary to the question of the court's exercise of discretion are relevant. See *id.* at

1008 ("[e]ach substantive issue is only to be considered where it is necessary to determine whether the trial court abused its discretion").

¶ 23 The standard governing the trial court's judgment on a motion to dissolve a temporary restraining order is whether the party in whose favor the order was issued has demonstrated a fair question as to the existence of its rights. *Id.* The trial court may deny the motion to dissolve if the party in whose favor the order was issued demonstrates, to the court's satisfaction, that the matter out of which the rights arise should be preserved until a decision on the merits. *Id.* at 1008-09.

¶ 24 Based on the foregoing principles, the broader question of whether the trial court abused its discretion in denying the Department's motion to dissolve thus narrows to the question of whether plaintiffs have demonstrated a fair question regarding whether they have the right to the name-and-address information they are seeking.

¶ 25                                   B. The Fair Question

¶ 26 The Department squarely argues that the trial court improvidently granted the temporary restraining order, because plaintiffs have no right whatsoever to the information sought. The Department concludes that, as a result, the trial court erred by denying its motion to dissolve. We agree.

¶ 27 As an initial matter, we observe that a party seeking a temporary restraining order, or any injunction, must establish facts demonstrating that (1) it has a protected right, (2) it will suffer irreparable harm if the injunctive relief is not granted, (3) it has no adequate remedy at law, and (4) there is a likelihood of success on the merits. *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 634 (2005). In making the application for injunctive relief like a temporary restraining order, the party need not make out its entire case; rather, it need only demonstrate the existence of a fair question on the elements and persuade the trial court to preserve the status quo until the case can be decided on the merits. *Id.* Generally, while entering a preliminary injunction or a temporary

restraining order that alters the status quo is disfavored, doing so can be proper in some circumstances. *Kalbfleisch v. Columbia Community Unit School District Unit No. 4*, 396 Ill. App. 3d 1105, 1117 (2009). However, if the court decides to alter the status quo in the appropriate circumstance, the party seeking the alteration must first establish the probability, not just the likelihood, of success on the merits before the relief will be granted. *Id.*

¶ 28 As a secondary matter, while the parties have characterized the order at issue as a temporary restraining order, it is not that cut and dried. As noted, a temporary restraining order is a type of injunction. One entered without notice and without a hearing is governed by section 11-101 of the Code (735 ILCS 5/11-101 (West 2018)) and is limited to a duration of 10 days. *County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184, ¶ 27. Where the temporary restraining order is entered with notice but still without a hearing, the 10-day limitation of the order no longer applies, but the hearing must be held within a short time of the expiration of the 10-day period; this prevents the possibly significant consequences of allowing the transitory temporary restraining order to persist for too long where the opposing party did not participate in a hearing. *Id.* However, where the temporary restraining order is entered after both notice and a hearing, then it is the functional equivalent of a preliminary injunction. *Id.* ¶ 28. It would therefore be arguable that the matter before us is the trial court's denial of a motion to dissolve a preliminary injunction.

¶ 29 Even if this were deemed the case, our review would still be limited to only the motion-to-dissolve portion of the Department's motion, although the briefing and decisional schedule would not be as extremely compressed as under Rule 307. This is because, even if styled as an appeal from the entry of a preliminary injunction, the more relaxed 30-day period (Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017)) is not tolled by a motion to reconsider. *Ben Kozloff*, 149 Ill. App. 3d at 507. To appeal the April 10 order as a preliminary injunction instead of a temporary restraining order, the Department would have had to file its notice of appeal within 30 days, or by May 11, 2020

(because May 10 fell on a Sunday). The notice of appeal was not filed until June 17, well after the expiration of the 30-day period to appeal a preliminary injunction. Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017). Thus, regardless of whether we deem the April 10 order a preliminary injunction or a temporary restraining order, our review would still be limited to the narrow issue of whether the trial court abused its discretion in denying the Department's motion to dissolve, as explained above.

¶ 30 One final preliminary point remains: the trial court's entry of the temporary restraining order did not preserve the status quo but, rather, it altered it. As best we can ascertain, the status quo was the Department's agreement to provide the addresses but not the names of individuals who test or have tested positive for COVID-19. The April 10 order changed that status quo by compelling the disclosure of both the names and the addresses. As a result, the trial court was obligated to consider plaintiffs' motions for a temporary restraining order under the more exacting standard of requiring the demonstration of a probability, rather than only a likelihood, of success on the ultimate merits. *Kalbfleisch*, 396 Ill. App. 3d at 1117.

¶ 31 With the preliminaries out of the way, we now turn to the narrow issue confronting us: whether the trial court abused its discretion in denying the Department's motion to dissolve. In other words, whether the trial court properly found that plaintiffs demonstrated, as they were required to do, the existence of a fair question as to the right claimed, namely, the right to the names and addresses of COVID-19-positive individuals residing in McHenry County.

¶ 32 Below, the parties adequately demonstrated that the information sought fell within an exception to HIPAA that permitted but did not require a local health department to release protected health information, like the names and addresses requested here, and we will not recapitulate that material in this discussion. It suffices to note that the parties both agree (and our review confirms) that the release of the information is permitted but not required; likewise both

the Illinois Department of Health (Ill. Dept. of Pub. Health, Guidance to Local Health Departments on Disclosure of Information Regarding Persons With Positive Tests for COVID-19 to Law Enforcement (Apr. 1, 2020), http://dph.illinois.gov/sites/default/files/ 20200401_Guidance_on_Disclosure_of_Private_Information.pdf [https://perma.cc/LM8U-TQWF]) and the Illinois State Attorney General (Ill. Att'y Gen. Office, Guidance Re: Disclosing Addresses for Confirmed COVID-19 Cases to First Responders (Apr. 3, 2020) https:// www.illinoisfirechiefs.org/assets/1/6/AGO_Guidance_re_Disclosure_of_Addresses_of_ Confirmed_COVID-19_Cases_to_First_Responders.pdf [https://perma.cc/S2JE-V8P2]) concluded that the disclosure of names and addresses was permissive and not required. Indeed, the trial court itself recognized the permissive and nonmandatory nature of the information sought: "to underscore the essential crux of the Court's findings in granting the TRO, under State and Federal law ***, the Defendants have the discretion to provide the requested information."

¶ 33    Where there is discretion to provide information sought, the party seeking the information cannot claim a right to that information. *E.g.*, *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 18 (to demonstrate a clear right to the relief sought, the proposed actor must have no discretion over performing the act sought to be compelled). Because there is no right to the information sought here, plaintiffs could not demonstrate the existence of a fair question regarding the right claimed—indeed, rather than a fair question, it is beyond question that plaintiffs have no right to the information sought. Because there is no right to the information sought, plaintiffs could not fulfill the elements necessary for the award of a temporary restraining order. *Gavrilos*, 359 Ill. App. 3d at 634. While we are at least approaching the substantive issue of the propriety of the entry of the temporary restraining order, we are nevertheless permitted to do so in ascertaining whether the trial court abused its discretion in denying the motion to dissolve. See *Stoller*, 162 Ill. App. 3d at 1008 ("[e]ach substantive issue is only to be considered where it is necessary to

determine whether the trial court abused its discretion" in reviewing the judgment on a motion to dissolve a temporary restraining order). Because plaintiffs could not show the existence of a clearly ascertainable right, they also could not show a probability, let alone a likelihood, of success on the merits. Finally, because plaintiffs could not establish the necessary elements, they were in no way entitled to the entry of the temporary restraining order. Perforce, the temporary restraining order was improvidently granted. As a result, plaintiffs could not remotely demonstrate the existence of a fair question regarding their right to the information sought. Thus, the trial court unquestionably abused its discretion in denying the motion to dissolve the temporary restraining order. *Stoller*, 162 Ill. App. 3d at 1008-09.

¶ 34    Moreover, plaintiffs argue that, because the Department failed to timely appeal the entry of the temporary restraining order, it became the law of the case and thus established the right sought. We disagree. Plaintiffs rely on our decision in *Bradford v. Wynstone Property Owners' Ass'n*, 355 Ill. App. 3d 736, 739 (2005), in which we held, "[t]he failure to timely appeal from a trial court's order disposing of a motion to grant, deny, modify, dissolve, or refuse to dissolve a TRO renders that order the law of the case." However, it is axiomatic that the holding of a case is only as strong as the authority on which it is based.[3] *Bradford* relied on *Hwang v. Tyler*, 253 Ill. App. 3d 43, 46 (1993), and *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 615 (1992), for its law-of-the-case proposition. *Bradford*, however, failed to recognize that *Hwang* and *Battaglia* were

_____

[3] We note that it is so axiomatic that we are unable to find a reported case using this precise formulation. However, we made this precise articulation of the axiom paraphrasing and accepting the State's argument in *People v. Maxey*, 2013 IL App (2d) 120283-U, ¶ 47 ("the holding of a case is only as strong as the authority on which it is based"; "if the authority underpinning a certain case turns out to be illusory, weak or flawed, then that case is similarly unsuitable for use as authority").

abrogated in *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11-12 (2001), which definitively held that an interlocutory appeal pursuant to Rule 307 was permissive and not mandatory. Because *Bradford* relied without comment on authority that had already been abrogated, its support for plaintiffs' argument is shaky at best, if not nonexistent. Further, even if we were to take at face value the proposition for which plaintiffs cite *Bradford*, that a temporary restraining order becomes the law of the case if it is not directly appealed, *Bradford*'s procedural posture is clearly distinguishable. There, the plaintiffs filed successive motions for a temporary restraining order, all of which sought identical relief. *Bradford*, 355 Ill. App. 3d at 740. We held that, by filing the successive motions, the plaintiffs were essentially attempting to evade the time constraints for perfecting an appeal from the grant of a temporary restraining order and that, because the plaintiffs did not take the initial bite at the apple and appeal, the original temporary restraining order became the law of the case. *Id.* By contrast, here, the Department has not attempted to evade the time limits for perfecting an appeal; moreover, it is appealing the denial of its motion to dissolve, not the issuance of the temporary restraining order. *Bradford* is therefore procedurally and factually distinguishable as well as wholly questionable for the proposition for which plaintiffs cite it. Accordingly, plaintiffs' contention is unavailing.

¶ 35  Plaintiffs rely on *Bank of Wheaton v. Village of Itasca*, 178 Ill. App. 3d 626, 632-33 (1989), to argue that, in order to justify the dissolution of a temporary restraining order, the party seeking its dissolution must show a change in circumstances. While this is a true statement, so far as it goes, *Bank of Wheaton* is not categorical and is of limited applicability to the specific circumstances here. What we mean by "not categorical" is seen by looking at the authority on which *Bank of Wheaton* relied, namely, *Bensons v. Issacs*, 22 Ill. 2d 606, 609 (1961). *Benson*, like *Bank of Wheaton*, does not stand for the proposition that the only way to challenge an injunction is to show that the circumstances have changed. Instead, *Benson* states simply that,

"[t]o entitle a party to such relief [(the modification or dissolution of an injunction)], however, the necessary showing must be made." *Id. Benson*, therefore, requires no more and no less than "the necessary showing" when demonstrating a party's entitlement to the modification or dissolution of an injunction. Where a party argues that an injunction was improvidently granted, a change in circumstances is irrelevant because the party is arguing that there was something in the initial circumstances that should have precluded the grant of the injunction, not that the circumstances have changed requiring a modification or dissolution. Here, the Department's motion to dissolve argued that the temporary restraining order had been improvidently granted. The Department's argument is surely a valid basis for a motion to dissolve, and *Bank of Wheaton* does not gainsay the Department's rationale for seeking the dissolution of the temporary restraining order. We therefore reject plaintiffs' contention.

¶ 36 Plaintiffs argue that misgivings about the right claimed by the party seeking injunctive relief do not justify the dissolution of the injunction. They rely on the following passage from *People ex rel. Stony Island Church of Christ v. Mannings*, 156 Ill. App. 3d 356, 362 (1987):

> "A temporary injunction should not be dissolved because the court may not be absolutely certain the plaintiff has the right he claims. In order to resist a motion to dissolve a temporary injunction, a plaintiff need not make out a case which would entitle him to relief at the final hearing, he need only make a *prima facie* showing that he raises a fair question as to the existence of the right he claims." *Id.*

This passage is, of course, entirely harmonious with *Stoller*, on which we rely for the standards and principles of our review. However, as we have seen, the fair-question standard does not apply to a case in which the temporary restraining order is entered not to preserve the status quo but to alter it. *Kalbfleisch*, 396 Ill. App. 3d at 1117. In such a circumstance, the party seeking the temporary restraining order must show a probability of success on the merits in the first instance.

*Id.* Here, plaintiffs not only cannot demonstrate the existence of any right to the information sought, they similarly cannot demonstrate any possibility of success on the merits, because they have no right to the information sought. As a result, even under *Mannings*, plaintiffs cannot even make a *prima facie* showing that they have raised a fair question as to the existence of the right claimed. Plaintiffs' argument is unavailing.

¶ 37 Plaintiffs argue that the amended guidance statements the Department attached to its motion to reconsider and to dissolve did not demonstrate any change in circumstances. As we have already determined, however, a change in circumstances is but one way to justify the dissolution of a temporary restraining order, not the only way. Here, the Department sought dissolution of the temporary restraining order because it was improvidently granted. Plaintiffs' arguments about the failure to adequately demonstrate any change in circumstances is unresponsive to the Department's argument.

¶ 38                                       III. CONCLUSION

¶ 39 The Department sought to dissolve, as improvidently granted, the April 10, 2020, temporary restraining order compelling it to provide to the Telephone System Board the names and address of COVID-19-positive individuals residing in McHenry County. Our review of the trial court's judgment on the motion to dissolve, reveals that, although the Department had the authority and discretion to allow the release of the information sought, plaintiffs had no right to the information. Because plaintiffs could not establish even an arguable right to the information, let alone a fair question, the temporary restraining order was patently improvidently granted. As a result, the trial court clearly abused its discretion in denying the Department's motion to dissolve the temporary restraining order. We note that our decision addresses only the narrow legal issue presented and nothing else; it should not be deemed to endorse or disapprove of anything beyond those narrow legal confines. We commend all parties for their efforts in these unprecedentedly

trying times, and we wish only that all the parties are placed in the best position to discharge their duties safely and effectively. We further express our heartfelt appreciation for the parties performing their difficult tasks, especially the individuals entrusted with our communities' safety and protection.

¶ 40  For these reasons, we reverse the judgment of the circuit court of McHenry County, and we dissolve the April 10, 2020, temporary restraining order.

¶ 41 Reversed.

---

**No. 2-20-0339**

---

| | |
|---|---|
| **Cite as:** | *McHenry County Sheriff v. McHenry County Department of Health*, 2020 IL App (2d) 200339 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, Nos. 20-MR-373, 20-MR-387; the Hon. Michael J. Chmiel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Robert J. Long and Douglas S. Dorando, of Daniels, Long & Pinsel LLC, of Waukegan, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jennifer J. Gibson, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellees City of McHenry, Village of Algonquin, City of Woodstock, and Village of Lake in the Hills. |
| | Patrick D. Kenneally, State's Attorney, of Woodstock (Jana Blake Dickson, Assistant State's Attorney, of counsel), for other appellee. |

---

| | |
|---|---|
| **Amicus Curiae:** | Colleen Connell, Ameri R. Klafeta, and Emily Werth, of Roger Baldwin Foundation of ACLU, Inc., of Chicago, for *amici curiae* Health & Medicine Policy Research Group, Illinois Coalition for Immigrant and Refugee Rights, and League of United Latin American Citizens of Illinois. |

---