2020 IL App (2d) 200401-U
No. 2-20-0401
Order filed August 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF JOSEPH A. BOGDAN, an Alleged Disabled Person | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | | No. 19-P-78 |
| (Joseph J. Bogdan and Jean Marie Simpson, petitioners-appellees v. Joseph A. Bogdan, respondent-appellant). | | Honorable Robert G. Gibson, Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Birkett and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion by requiring the respondent to surrender his passport to the court pending a hearing on an emergency motion/petition.

¶ 2    Respondent, Joseph A. Bogdan (Dr. Bogdan), appeals two orders requiring him to surrender his passport to the trial court pending a hearing on an emergency motion/petition filed by the petitioners, Joseph J. Bogdan and Jean Marie Simpson.[1]   We affirm.

¶ 3                                    I. BACKGROUND

_____

[1] The petitioners' names are alternatively listed in the record as Joseph G. Bogdan and Jeanmarie Simpson.  We will use the names listed on the petitioners' appellee's brief.

¶ 4    Dr. Bogdan is 93 years old and is married to Judith Bogdan.  The petitioners are two of Dr. Bogdan's children from a previous marriage.  In January 2019, the petitioners filed a "Verified Emergency Petition for Temporary and Plenary Guardianship of a Disabled Adult," naming Dr. Bogdan as the alleged disabled person.  According to the petitioners, Dr. Bogdan suffers from "mild to moderate dementia" and various physical ailments.  The petitioners alleged, *inter alia*, that Judith was neglecting Dr. Bogdan's medical needs and was isolating him from his children.  The petitioners also alleged that Judith, in the past, had threatened to take Dr. Bogdan to her native country, Hungary, and never return.

¶ 5    The trial court appointed the Public Guardian for Du Page County as the temporary guardian of Dr. Bogdan's person and estate.  Subsequently, in an agreed order, the court appointed a guardian *ad litem* (GAL) for Dr. Bogdan and required that Dr. Bogdan not leave the jurisdiction without further order of court.

¶ 6    In December 2019, the parties entered an agreed order that effectively settled the case.  In salient portion, the parties agreed that Dr. Bogdan would not waive any rights regarding his financial matters or medical care.  Margaret Chizek (Mardy), however, would act as Dr. Bogdan's "care manager and facilitator."  In that capacity, Mardy would be responsible for creating a care plan for Dr. Bogdan, approving and supervising his caregivers, coordinating contact between Dr. Bogdan and his children, and sharing with the children general information about Dr. Bogdan's care.  Dr. Bogdan would be permitted to travel out of state if Mardy agreed.  Judith and the petitioners were to cooperate with Mardy in good faith, and the trial court would retain jurisdiction to enforce the agreement.  The petitioners withdrew their guardianship petition with prejudice.

¶ 7    On July 13, 2020, the petitioners filed an "Emergency Motion to Enforce Settlement Agreement and Petition for Rule to Show Cause."  The petitioners alleged that Judith failed to

comply with the December 2019 order in multiple respects. Among the allegations were that Judith and Dr. Bogdan cut off communications with Mardy and that Judith interfered with the petitioners' contact with Dr. Bogdan. The petitioners also explained that they received information from an unnamed "concerned family friend" that Dr. Bogdan and Judith intended to move to Hungary imminently, even though Mardy had no knowledge of any pending move and would not approve such move. For their relief, the petitioners requested that the court: (1) issue a rule to show cause against Judith, compelling her to explain why she should not be held in indirect civil contempt for violating the December 2019 agreement, (2) order the parties not to take Dr. Bogdan outside of the State of Illinois without court approval, (3) order Dr. Bogdan to surrender all passports immediately, (4) authorize the parties to notify the airlines that Dr. Bogdan is not permitted to travel, and (5) vacate the portion of the December 2019 agreement that withdrew the guardianship petition.

¶ 8    The petitioners presented their emergency motion/petition to the trial court on July 16. Upon questioning by the court, Dr. Bogdan's attorney indicated that she had no knowledge that Dr. Bogdan intended to move to or travel to Hungary. Judith's attorney made similar representations to the court. The court entered a briefing schedule on the emergency motion/petition, allowing the petitioners to provide supplemental affidavits to substantiate their allegations. The court set the matter for hearing on September 3. To "maintain the status quo" while the emergency motion/petition was being heard, the court ordered Dr. Bogdan to surrender his passport to the court by the next day. On July 17, the court issued a written order reflecting those rulings.

¶ 9    Dr. Bogdan did not surrender his passport to the court by the July 17 deadline. On July 20, he filed a notice of appeal from the July 17 order.

¶ 10    Meanwhile, the parties filed several motions in the trial court, including (1) Dr. Bogdan's emergency motion to stay the order requiring him to surrender his passport and (2) the petitioners' emergency motion to enforce the order requiring Dr. Bogdan to surrender his passport.  The parties presented those motions to the court on July 21.  That day, the court clarified that its order requiring Dr. Bogdan to surrender his passport was a temporary restraining order (TRO).  The court also took the opportunity to provide a more detailed explanation regarding its reasons for requiring Dr. Bogdan to surrender his passport.  Those reasons included that: (1) if Dr. Bogdan were allowed to leave the country and he did not return, it would "defeat the entire case and the agreed order that the parties signed" and there would be irreparable harm; (2) there was no adequate remedy at law, as "[m]oney damages wouldn't suffice"; (3) Dr. Bogdan's attorney had stated that Dr. Bogdan had no plans to travel, so there was no harm to him in surrendering his passport; (4) there is presently an advisory against travelling internationally; (5) pursuant to the settlement agreement, Dr. Bogdan had to obtain approval from Mardy before traveling, and there was no indication that Mardy had agreed to Dr. Bogdan moving out of the country; and (6) there were "good medical reasons" for a 93-year-old man not to travel during the pandemic.  The court thus denied Dr. Bogdan's emergency motion for a stay and granted the petitioners' emergency motion to enforce the previous order.  The court ordered Dr. Bogdan to surrender his passport to the court within 24 hours, which was to be facilitated through the GAL.  The court accelerated the hearing on the petitioners' "Emergency Motion to Enforce Settlement Agreement and Petition for Rule to Show Cause" to August 20.

¶ 11    On July 22, the court entered an order reflecting its rulings from the previous day.[2]

---

[2] The record reflects that the GAL took possession of Dr. Bogdan's passport in accordance with the court's order.

¶ 12    On July 23, Dr. Bogdan filed an amended notice of appeal, specifying his intent to appeal the July 22 order.

¶ 13                                    II. ANALYSIS

¶ 14    A party seeking a TRO "must establish facts demonstrating that (1) it has a protected right, (2) it will suffer irreparable harm if the injunctive relief is not granted, (3) it has no adequate remedy at law, and (4) there is a likelihood of success on the merits." *McHenry County Sheriff v. McHenry County Department of Health*, 2020 IL App (2d) 200339, ¶ 27.  Although the petitioner "need not make out its entire case," the petitioner must "demonstrate the existence of a fair question on the elements and persuade the trial court to preserve the status quo until the case can be decided on the merits." *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 27.  A trial court has "broad discretionary powers to grant or deny a request for an injunction," so the party challenging the court's order on appeal has the burden of showing that the court abused its discretion.  *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 637 (2005).  "An abuse of discretion occurs when no reasonable person would take the trial court's view." *In re T.M.H.*, 2019 IL App (2d) 190614, ¶ 17.

¶ 15    We hold that the trial court did not abuse its discretion by ordering Dr. Bogdan to surrender his passport pending a further hearing on the petitioners' "Emergency Motion to Enforce Settlement Agreement and Petition for Rule to Show Cause."  The court provided a detailed and perfectly reasonable explanation, both on the record and in writing, of why the circumstances warranted issuing a TRO.

¶ 16    On appeal, Dr. Bogdan argues that the court's orders violated his constitutional right to travel.  See, *e.g.*, *Kent v. Dulles*, 357 U.S. 116, 125 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth

Amendment."); *In re Marriage of Gurda*, 304 Ill. App. 3d 1019, 1028-29 (1999) (the trial court abused its discretion by *sua sponte*, and without explanation, impounding a litigant's passport where there was no indication or allegation that the litigant intended to leave the jurisdiction). Here, however, the December 2019 agreed order already imposed significant restrictions on Dr. Bogdan's right to travel, as Dr. Bogdan could travel out of state only with Mardy's approval. The petitioners alleged in their "Emergency Motion to Enforce Settlement Agreement and Petition for Rule to Show Cause" that, due to the pandemic, Mardy would not approve Dr. Bogdan to travel internationally. Furthermore, the circumstances here are distinguishable from the cases that Dr. Bogdan cites, as the trial court restricted Dr. Bogdan's ability to travel only to preserve the status quo pending a further hearing. The fact that Dr. Bogdan's attorney said that Dr. Bogdan does not intend to leave the country buttresses our conclusion that the trial court's orders do not unjustifiably interfere with Dr. Bogdan's constitutional rights.

¶ 17    The trial court was also entitled to consider that the petitioners leveled numerous serious allegations against Judith, both in their initial guardianship petition and in their "Emergency Motion to Enforce Settlement Agreement and Petition for Rule to Show Cause." Although some of the allegations in this emergency motion/petition were based on hearsay (including, as Dr. Bogdan notes, the petitioners' belief that Dr. Bogdan and Judith intended to leave the country imminently), the court was justified in taking proactive measures to prevent harm to Dr. Bogdan, especially in the face of the petitioners' allegations that Dr. Bogdan and/or Judith had not complied with other court orders. It plainly would be ill-advised for a 93-year-old man with underlying health conditions to travel internationally during a pandemic.

¶ 18    Although Dr. Bogdan is correct that the petitioners did not present "substantiated facts or allegations," the intent of the trial court's order was to preserve the status quo until such allegations

could either be substantiated or not. And while Dr. Bogdan criticizes the court for refusing to hear testimony on July 22 (we assume he means July 21), in the absence of an offer of proof, we have no way of knowing which witnesses Dr. Bogdan wished to call and what testimony he intended to elicit. The only witness that Dr. Bogdan specifically mentioned calling to the stand was the petitioners' attorney, and that was on the issue of whether the petitioners' emergency motion to enforce the July 17 order was actually an emergency. Given that there was no dispute that Dr. Bogdan did not tender his passport to the court by the court's original deadline of July 17, it is not apparent how the testimony of the petitioners' attorney would be relevant or necessary.

¶ 19　Furthermore, the trial court was justified in believing that each of the requirements for issuing a TRO were satisfied. The petitioners certainly had protected rights under the December 2019 agreed order. Chief among them was their expectation that a neutral third party, Mardy, would supervise the decisions affecting their father's health. If Dr. Bogdan and Judith left the country and failed to return, there would be no way for the trial court to enforce the terms of the agreed order, the harm to the petitioners would be irreparable, and there would be no adequate remedy at law. As for the petitioners' likelihood of success on the merits of their "Emergency Motion to Enforce Settlement Agreement and Petition for Rule to Show Cause," we reiterate that the petitioners' burden at this juncture was merely to "demonstrate the existence of a fair question" and to "persuade the trial court to preserve the status quo until the case can be decided on the merits." *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 27. The trial court was familiar with the parties and the history of this case, and it was in the best position to evaluate the likelihood that the petitioners' allegations had merit.

¶ 20    We are unable to conclude that no reasonable person would have ordered Dr. Bogdan to surrender his passport temporarily.   Therefore, we cannot say that the trial court abused its discretion.

¶ 21                                   III. CONCLUSION

¶ 22    The judgment of the circuit court of Du Page County is affirmed.

¶ 23    Affirmed.