2026 IL App (3d) 260007
Nos. 3-26-0007, 3-26-0008, 3-26-0009 (cons.)

Opinion filed February 17, 2026

_____

| | | |
|---|---|---|
| M.D., a Minor, by David L. Fox, Department of Children and Family Services Guardianship Administrator, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | (Appeal No. 3-26-0008) |
| | ) | Circuit No. 25-CH-35 |
| MOMENCE COMMUNITY UNIFIED SCHOOL DISTRICT 1 and SHANNON ANDERSON, in His Official Capacity as Superintendent, | ) ) ) ) | |
| | ) | The Honorable |
| | ) | Scott N. Sliwinski, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| A.S., a Minor, by David L. Fox, Department of Children and Family Services Guardianship Administrator, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | (Appeal No. 3-26-0009) |
| | ) | Circuit No. 25-CH-37 |
| MOMENCE COMMUNITY UNIFIED SCHOOL DISTRICT 1 and SHANNON ANDERSON, in His Official Capacity of Superintendent, | ) ) ) ) | |
| | ) | The Honorable |
| | ) | Scott N. Sliwinski, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

| M.W., a Minor, by David L. Fox, | ) | Appeal from the Circuit Court |
|---|---|---|
| Department of Children and Family Services | ) | of the 21st Judicial Circuit, |
| Guardianship Administrator, | ) | Kankakee County, Illinois. |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
|     v. | ) | (Appeal No. 3-26-0007) |
| | ) | Circuit No. 25-CH-55 |
| MOMENCE COMMUNITY UNIFIED | ) | |
| SCHOOL DISTRICT 1 and SHANNON | ) | |
| ANDERSON, in His Official Capacity of | ) | |
| Superintendent, | ) | The Honorable |
| | ) | Scott N. Sliwinski, |
|     Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Presiding Justice Hettel and Justice Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1     The three cases in this consolidated appeal involve minors ranging in age from 13 to 15 who are residing in a nonprofit shelter in Momence, Illinois, while in the custody of the Illinois Department of Children and Family Services (DCFS). The minors' repeated attempts to enroll in public schools within Momence Community Unified School District 1 were denied. Consequently, the minors filed separate complaints seeking injunctive relief, declaratory relief, compensatory damage, and immediate enrollment in the Momence public schools. They also filed emergency motions seeking temporary restraining orders (TROs) and preliminary injunctions. After a hearing, the trial court denied the minors' requests for TROs and preliminary injunctions. The minors then sought interlocutory appeals from those denials, which we consolidated for decision. We now reverse the trial court's orders in each case and remand for further proceedings.

¶ 2                                  I. BACKGROUND

¶ 3        The three plaintiffs, M.W., M.D., and A.S., were minors in the legal custody of DCFS who were housed in a nonprofit shelter located in Momence, Illinois, called Aunt Bobbie's (the shelter). M.W., age 14, was placed in the shelter on October 24, 2025; M.D., age 15, had been at the shelter since July 15, 2025; A.S., age 13, had resided at the shelter since July 5, 2025.

¶ 4        On July 21, 2025, DCFS's education adviser for Will and Kankakee Counties notified defendants Momence Community Unified School District 1 and its superintendent, Shannon Anderson, (together, the District) that it intended to offer online learning only for shelter residents with safety concerns and that the shelter was not yet set up for online school. In the same e-mail, DCFS's education adviser informed the District that online learning would be unavailable for some new DCFS shelter residents, and she would be enrolling those students in the District's public schools. The District responded the same day, restating its prior objection in a letter dated February 5, 2025, to providing minor residents of the shelter with in-person education.

¶ 5        DCFS had determined that enrollment in District schools was in the minor students' best interests. After two of the minors in this appeal sent a letter demanding immediate enrollment in District schools, the District's counsel replied on August 26, 2025, expressly stating that the District would not enroll those residents, or any other temporary residents at the shelter, in its schools.

¶ 6        All subsequent attempts to enroll the three minor plaintiffs in District schools were also rebuffed, with the District repeatedly restating its refusal to enroll any minor residing in the shelter. Through counsel, the three minor plaintiffs filed complaints against the District on November 1, 2025, seeking injunctive and declaratory relief, compensatory damages, and immediate enrollment in District schools. That same day, the minors filed separate emergency motions for TROs and preliminary injunctions mandating their immediate enrollment.

¶ 7 After a December 22, 2025, hearing, the trial court denied each of the emergency motions on January 2, 2026. The minors filed separate interlocutory appeals as of right pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), and we consolidate those appeals for decision.

¶ 8 II. ANALYSIS

¶ 9 On appeal, the minors contend that the trial court erred in denying their motions because they established the essential elements for issuance of a TRO. In support, they raise three arguments, asserting that the trial court erroneously found that (1) the denial of enrollment maintained the status quo, (2) they had not raised a fair question regarding imposition of irreparable harm if they were denied enrollment in public school, and (3) no showing of a likelihood of success on the merits could be made in the absence of a best interest determination. This court reviews the denial of a TRO for an abuse of the trial court's discretion. *McHenry County Sheriff v. McHenry County Department of Health*, 2020 IL App (2d) 200339, ¶ 22. An abuse of discretion occurs when the trial court failed to use conscientious judgment or when, "considering all the circumstances, the court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice." *People v. Couch*, 387 Ill. App. 3d 437, 444 (2008). In reviewing whether an abuse of discretion has occurred, we may also consider the relevant substantive issues. *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 33.

¶ 10 Issuance of a temporary restraining order is intended to preserve the status quo pending a determination of whether a preliminary injunction should be granted. *County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184, ¶ 28. The elements of proof to establish a TRO and a preliminary injunction are the same. *Id.* The status quo is typically defined as " 'the last actual, peaceable, uncontested status which [preceded] the pending controversy.' " *Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 417 (1991) (quoting *Martin v. Eggert*, 174 Ill. App.

4

3d 71, 77 (1988)). Usually, that means the court should "keep[ ] everything at rest. Sometimes, the condition of rest is exactly what will inflict the irreparable injury," however, justifying the issuance of a temporary mandatory injunction. *Brooks v. La Salle National Bank*, 11 Ill. App. 3d 791, 799 (1973).

¶ 11    To obtain a TRO, a party must show (1) a clearly ascertained right requiring protection, (2) irreparable injury in the absence of injunctive relief, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the underlying claim. *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 27. "[T]he party need not make out its entire case; rather, it need only demonstrate the existence of a fair question on the elements and persuade the trial court to preserve the status quo until the case can be decided on the merits." *Id.*

¶ 12                           A. Maintaining the Status Quo

¶ 13    The minors argue that it was error for the trial court to find that maintaining the status quo meant barring them from in-person education in the District's public schools. In *Kalbfleisch v. Columbia Community Unit School No. 4*, 396 Ill. App. 3d 1105, 1117 (2009), the court adopted the view that, while maintaining the status quo often requires "keeping all actions at rest, *** sometimes it happens that the status quo is not a condition of rest but, rather, is one of action and the condition of rest is exactly what will inflict the irreparable harm." This is such a case.

¶ 14    In *Kalbfleisch*, the court considered whether a preliminary injunction permitting a public school student to attend classes with a service dog improperly altered the status quo because the student had not previously attended school with a service animal. *Id.* The court affirmed the award of injunctive relief, explaining that a preliminary injunction is intended to avoid " 'a threatened wrong or the further perpetration of an injurious act,' " namely a violation of the student's statutory

5

right to attend classes with a service dog. *Id*. at 1118 (quoting *Kolstad v. Rankin*, 179 Ill. App. 3d 1022, 1034 (1989)).

> "To hold that the status quo was [the student] not attending school with his service dog because the service dog never attended school last year would leave [the student] with no avenue to prevent suffering irreparable harm—the purpose behind issuing a preliminary injunction in the first place. *E.g.*, *Wilson v. Wilson*, 217 Ill. App. 3d 844, 849 (1991); *Davis [v. East St. Louis & Interurban Water Co.*, 133 Ill. App. 2d 801, 804-05 (1971)]* ('The prevention of this irreparable injury is the keystone to the granting of injunctive relief ***[.]'). In effect, to hold otherwise would be to hold that despite finding that [the student] has raised a fair question regarding his legal right to attend school and take a service animal with him under the service animal statute, the status quo was the school district likely infringing upon [the student's] claimed legal right. *A probable violation of law should never be the status quo.* [*Citation.*] *'The function of a preliminary injunction is not merely to contain ongoing damage but to prevent prospective damage.'* [*County of Du Page v.*] *Gavrilos*, 359 Ill. App. 3d [629, 638 (2005)]." (Emphasis added.) *Id*. at 1118-19.

¶ 15    Similarly, here the Education for Homeless Children Act (Act) (105 ILCS 45/1-20 (West 2024)) gives the minors the statutory right to attend public school. Section 1-20 of the Act states: "If the parents or guardians of a homeless child or youth choose to enroll the child in a school other than the school of origin, *that school immediately shall enroll the homeless child* or youth ***." (Emphasis added.) *Id.* The District's contention that the shelter had previously asserted that residents would not attend local schools does nothing to alter the minors' statutory right to attend public school as expressly granted in section 1-20.

6

¶ 16    The students here, like the one in *Kalbfleisch*, met the requirement of showing that a TRO is necessary to maintain the status quo based on their assertion that the District violated their statutory right under the Act to attend public school. The "last peaceable uncontested status" preceding the pending proceedings was the minors asserting their statutory rights to a public education. See *Steel City Bank*, 224 Ill. App. 3d at 417 (defining the "status quo"). As in *Kalbfleisch*, to hold that maintaining the status quo required upholding the District's refusal to enroll those students simply because they had not previously asserted the right to attend public school in Momence would leave them with "no avenue to prevent suffering irreparable harm—the purpose behind issuing a preliminary injunction in the first place." *Kalbfleisch*, 396 Ill. App. 3d at 1118. Similar to the student in *Kalbfleisch*, the minors here need do nothing more than assert their statutory rights to show that injunctive relief is needed to maintain the status quo. See *id.*

¶ 17                                   B. Irreparable Harm

¶ 18    The minors next argue that the trial court erred by finding that they had not raised a fair question about suffering irreparable harm if the District continued to deny their enrollment in public school. For the reasons explained in *Kalbfleisch*, we agree.

¶ 19    In *Kalbfleisch*, the court determined that the complaining student had "raised a fair question regarding the existence of his right to take [a service dog] with him to school under the service animal statute." *Id.* at 1116. Contrary to the school district's contention, the student did not have to prove that the dog was a service animal; he had only to "raise a fair question regarding the existence of his claimed right." *Id.* at 1115. After reviewing the service animal statute, the court determined that the student had successfully raised a fair question about whether the statute applied to him. *Id.* It also concluded that the alleged infringement of the student's statutory right to use the service animal could result in deterioration of the student's behavior, which was sufficient to

7

establish irreparable harm. *Id.* at 1116. The argument that the harm to the student was "self-inflicted" because he would have been permitted to attend school without his service dog was rejected by the appellate court. Recognizing that the student had alleged a fair question about his statutory right to attend school with his service animal, the court stated, "The school district cannot deny Carter access to school with his service dog and then claim that his harm is self-inflicted." *Id.*

¶ 20 Here, the school district did not bar the minors from bringing a service animal to school; *it barred the students themselves from exercising their alleged statutory right to enroll in public school.* In the absence of any showing of safety concerns occasioned by their enrollment, or some other exceptional circumstances, the risk of irreparable harm resulting from the denial of their public school attendance is manifest. The statute does not authorize the substitution of online or off-site education for in-school public education. The infringement of the minors' right to receive a public education supports the conclusion that they will suffer irreparable harm in that they "cannot be adequately compensated therefor in damages or *** damages cannot be measured by any certain pecuniary standard" if they are barred from enrolling in school. (Internal quotation marks omitted.) *Id.* Accordingly, we hold that the minors have raised a fair question about whether they will suffer irreparable harm if the District continues to bar them from enrollment in public school. That is all that is necessary to make a showing of irreparable harm sufficient to obtain temporary injunctive relief.

¶ 21                              C. Determination of Best Interests

¶ 22 Finally, the minors argue that the trial court abused its discretion by finding that they could not show a likelihood of success on the merits of their claim in the absence of a best interest determination as required in the federal statute known as Every Student Succeeds Act (ESSA) (20

8

U.S.C. § 6301 *et seq.* (2024)). The purpose of the ESSA is "to provide all children significant opportunity to receive a fair, equitable, and high-quality education, and to close educational achievement gaps." *Id.* § 6301. Section 6311 of the ESSA states:

"(1) Descriptions

Each State plan shall describe—

\* \* \*

(E) the steps a State educational agency will take to ensure collaboration with the State agency responsible for administering the State plans under parts B and E of title IV of the Social Security Act [(42 U.S.C. §§ 621, 670 (2024)] *to ensure the educational stability of children in foster care, including assurances that—*

(i) any such child enrolls or remains in such child's school of origin, unless a determination is made that it is not in such child's best interest to attend the school of origin, which decision shall be based on all factors relating to the child's best interest, including consideration of the appropriateness of the current educational setting and the proximity to the school in which the child is enrolled at the time of placement;

(ii) *when a determination is made that it is not in such child's best interest to remain in the school of origin, the child is immediately enrolled in a new school*, even if the child is unable to produce records normally required for enrollment;

9

(iii) the enrolling school shall immediately contact the school last attended by any such child to obtain relevant academic and other records ***[.]" (Emphases added.) 20 U.S.C. § 6311(g)(1)(E)(i), (ii), (iii).

¶ 23 Subsection 6311(g)(1)(E)(ii) of the ESSA is consistent with section 1-20 of the Act, which states: "If the parents or guardians of a homeless child or youth choose to enroll the child in a school other than the school of origin, *that school immediately shall enroll* the homeless child or youth." (Emphasis added.) 105 ILCS 45/1-20 (West 2024). Moreover, section 1-10 of the Act gives the guardian of a homeless child a choice of schools, offering "the option of either: (1) continuing the child's education in the school of origin for as long as the child remains homeless ***; or (2) enrolling the child in any school that nonhomeless students who live in the attendance area in which the child or youth is actually living are eligible to attend." *Id.* § 1-10. In this instance, the minors' guardian, the DCFS guardianship administrator, determined that it is in their best interests to enroll in a public school in Momence, where they resided, and, consequently, sought to enroll them in a District school.

¶ 24 The District argues, however, that the Garden of Prayer Youth Center (GOP), which operates the shelter where the minors reside, previously asserted that no residents would be enrolled in District schools because their stay was often temporary. Instead, remote learning would be offered through their school of origin or GOP. The District specifically cites statements made by GOP during 2022 hearings on its request for a special use permit to operate the shelter as well as a later supplemental hearing before the Kankakee County Planning, Zoning and Agriculture Committee. During the latter hearing, a GOP official stated that many of the children in the shelter would take advantage of Illinois's online education option because they would reside there for less

10

than six months. The official added that "a lot of them we will keep them in the districts where they are from since their stint with us will be so short and it will retraumatize them as a child to put them in a whole new school, go to that school for 14 days, and then we pull them out of that school and send them to another district when they get permanently placed." Because those statements did not account for the individual circumstances of any particular minor residing at the shelter, we are not persuaded by the District's argument that GOP's broad statements of intention are relevant here. Each of the minors residing in the shelter has an individual statutory right to a public education that cannot be shunted aside by mere broad statements of institutional intent.

¶ 25 The District also contends that officials from the District, GOP, and DCFS met and determined that new shelter residents would receive the best interest determination (BID) meeting to review their specific circumstances. The District notes the lack of evidence showing that a BID meeting has been held for any of the minor plaintiffs. Nonetheless, the record shows that a GOP caseworker and placement supervisor stated that each minor was expected to reside at the shelter for "the foreseeable future" and asserted that the best interests of each child required that they be immediately enrolled in a local public school. In addition, the minors' legal guardian, the DCFS guardianship administrator, determined that their best interests were to be enrolled in a local public school, a conclusion that led to the filing of the instant lawsuit.

¶ 26 Reading the relevant sections of the Act and the ESSA in harmony, as we must, we find that they do not support the conclusion that the minors cannot be enrolled in District public schools without a BID meeting. Instead, the clear intent of both statutes is to provide educational options to the minors' guardians to ensure a fair and equitable education. Indeed, the ESSA specifically states its intent "to provide all children significant opportunity to receive a fair, equitable, and high-quality education, and to close educational achievement gaps." 20 U.S.C. § 6301. Requiring

11

a BID meeting before a minor may be enrolled in the guardian's school of choice would create unnecessary delay in the children's education that would undermine the goals of fairness and equity in learning for all children, regardless of their circumstances.

¶ 27    The District is tasked with providing educational opportunities for local students. That duty may not be deferred indefinitely simply because a BID meeting has not yet been held. Delays in those meetings could result from a myriad of causes unrelated to the minors themselves yet they would disrupt the minors' ability to obtain the public education to which they are rightfully entitled. Any unnecessary delay would be contrary to both the spirit and letter of the Act and the ESSA. The minors have the right to a public education; any speculation that private online learning supplements and instructors would suffice (absent extraordinary circumstances) fails to supplant that statutory entitlement. The children's guardians have already determined that immediate enrollment in public school is in their best interests. It is difficult to envision how the District's refusal to enroll the minors, in apparent contradiction of the applicable statutory provisions, better reflects their best interests.

¶ 28    We also note that the instant appeal involves the denial of only a TRO, *i.e.*, *temporary* injunctive relief. A final determination of whether the District must enroll the minors remains pending before the trial court. In light of the express provisions of the applicable statutes, however, we conclude that the trial court abused its discretion in finding that the minors did not show a reasonable likelihood of success on the merits of their claims.

¶ 29                              III. CONCLUSION

¶ 30    For the reasons stated, we conclude that, when "considering all the circumstances, the [trial] court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice" to the minors. *Couch*, 387 Ill. App. 3d at 444. The minors established a fair

12

question regarding their likelihood of success and preservation of the status quo until the merits of the underlying cases are decided. See *McHenry County Sheriff*, 2020 IL App (2d) 200339, ¶ 27 (explaining the requirements for issuing a TRO). Accordingly, the trial court's denial of their request for injunctive relief was an abuse of discretion. We reverse the denials of the three minors' TRO requests by the circuit court of Kankakee County and remand the causes to that court for further proceedings.

¶ 31        Reversed and remanded.

*M.D. v. Momence Community Unified School District 1*, 2026 IL App (3d) 260007

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, Nos. 25-CH-35, 25-CH-37, 25-CH-55; the Hon. Scott N. Sliwinski, Judge, presiding. |
| **Attorneys for Appellant:** | Jon Yeh and Kathryn Liss, of Prairie State Legal Services, Inc., of Joliet, for appellant. |
| **Attorneys for Appellee:** | Caroline Roselli and Aidan C. Falk, of Robbins Schwartz, Ltd., of Chicago, for appellees. |